UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

THEODORE R. WILSON,
Appellant,

v.

ARMED FORCES RETIREMENT
HOME,
Agency,

DOCKET NUMBER
DC-0351-06-0831-I-1

DATE: June 7, 2007

## APPELLANT'S PETITION FOR REVIEW

The Appellant requests that the board review the decision of the Administrative Judge (AJ) in this appeal. The AJ apparently failed to understand certain presentations of the Appellant while seeming to give the Agency the benefit of the doubt in almost every instance.

## APPELLANT'S COMPETITIVE SERVICE STATUS

The Appellant was changed from competitive service to excepted service when he signed a statement concerning his retirement fund. However the Appellant's position did not change in the Security and Investigations Division at AFRH-W. (See attached exhibit 1.) Consequently the Appellant should have remained in the competitive service as stated in 5 U.S.C. 3301, I, 3.1. Notwithstanding any authority the Agency had to employ residents in the excepted service, the Appellant's position was first put into excepted service when he signed that statement. His remaining in the competitive service is mandated by the aforementioned law.

The AJ's comment in his decision that the Appellant understood that he was signing away his competitive service status is contrary to the facts. Signing that document occurred after the Appellant had worked for the government approximately 18 months. The Appellant wrote and

1

signed what was dictated to him by a personnel person. The issue at hand was to withdraw money from a retirement fund. At that time the Appellant's knowledge of competitive service was limited to the understanding that as a veteran he was entitled to the job that he held over non-veterans (See attached affidavit). The personnel person explained nothing about a potential consequence of resigning from the civil service. The Appellant believes that cases cited in **Chavies, Vincent N. v. Department of the Navy** should apply to this case:

> ...If the employee did not know of the right he was waiving, or if the waiver did not reflect an "intentional relinquishment or abandonment of" those rights, the waiver is not effective and cannot be enforced. See **Brewer v. Williams, 430 U. S. 387, 404 (1977)** (Waiver of an employee's right ...requires both comprehension and relinquishment, **Johnson v. Zerbst, 304 U.S. 458, 464 (1938)** ("A waiver is ordinarily an intentional relinquish or abandonment of a known right or privilege.") **Roberson v. Veterans Administration, 32 m.s.p.r. 173, 176, (1987).**

As these precedents indicated, the Appellant should retain his status as a competitive service employee with all of the attendant rights and privileges including R-I-F privileges.

## AGENCY'S ALLEGED R-I-F

The Agency is credited by the AJ with having conducted a R-I-F when what it did was simply fire all resident employees. A R-I-F would have entailed replacing released employees with other employees on the (in this case, phantom) R-I-F retention register. Some residents, George Lausund and James Harris to identify two, were replaced by outside employees not in the retention area and eligible to be on the retention register pursuant to C.F.R.351.201. (See affidavits of Lausund and Harris previously submitted.) Consequently the Agency did not conduct

2

a R-I-F by an action consistent with a R-I-F. Further, the Appellant, who held a GS-5 equivalent position would not have been replaced by a GS-9 and a GS-12 in the Security and Investigations Division unless the GS-9 is a preference eligible for R-I-F veteran and not by the GS-12 under any legitimate circumstance if the Appellant was given his lawful rights under C.F.R. 352.201 and C.F.R. 351.501

## AGE DISCRIMINATION IN EMPLOYMENT

The Agency violated the Age Discrimination in Employment Act, 29 U.S.C. when it targeted older workers for firing. From the EEO informal report:

> Another issue Mr. Fox (actually Mr. Cox) had with the older guards at Armed Forces Retirement Home 'was that they were not doing their jobs properly, as from time to time they would be found asleep, which was not safe for a government agency in DC, what with all the threats since 9/11.'

This statement along with others by the COO clearly saying that the older guards are not doing a job on par with the younger guards shows age discrimination. The statement was made in reference to why the Appellant was fired from his job. The Agency mentions that the civil service guards' ages ranged up to 70 years old. The one 70 year old civil service guard was a former AFRH-W resident. That he was not put into the stipend program is attributed to his ineligibility, not that the COO would not have fired him too as he did to those he thought within his authority.

Statements by both Mr. Dickerson and Mr. Rodriquez indicated that neither had any reports of older guards sleeping on duty and not doing their jobs. The statement by the COO was invented to justify firing all the older residents and the Appellant in particular.

3

If a company targets older workers for layoff (firing) a case of age discrimination can be established. (Cichewicz v. Unova Indus. Automotive Sys. Inc. 6th Cir) The Agency, in fact, did target older residents.

## BUSINESS DECISION/INVOLUNTARY SERVITUDE

The COO attributes the abolishment of all resident full-pay jobs to a business decision. This business decision seems to have been made with forethought and malice. It was wholly instituted with the calculated intent of forcing residents to provide their labor without adequate compensation and against their will which amounts to involuntary servitude.

The **XIII Amendment to the Constitution of the United States of America** prohibits involuntary servitude within the United States. During the first briefing concerning the stipend program, residents were told that any time they worked beyond 12 hours would be donated to the home as time was donated by residents at AFRH-Gulfport, MS. Gulfport is a thing apart from AFRH-W as is its stipend program since residents were not removed from full time employment to work in it. The COO invokes "a mandate from Congress to run the Armed Forces Retirement Home here in Washington and the retirement home in Gulfport under the model other retirement homes operate." (See Cox affidavit agency document page 83) It is an unseemly conclusion to draw from the applicable law, U.S.C. 24, 411.

    **(d) Operation**

    (1) [Not material]

    (2) Each facility of the Retirement home shall be maintained as a separate establishment of the Retirement Home for administrative purposes...

This code does not seem to contain the word "model" nor does it infer anything to support

4

the COO's statement above.

Involuntary servitude happened every first time a resident worked unpaid for a period that he or she would have preferred to have been paid for which happened in some cases (The Appellant has reached this conclusion from polling Cavanaugh, Lausund and two other unnamed Residents, all would have preferred to be paid for all of their labor). Robert Cavanaugh (See Appellant's statement, Agency document page 69) worked in the post office as a part-time employee pre-stipend. After the stipend program was started, Cavanaugh went back to work in the post office as a stipend employee. Cavanaugh informally complained to the Appellant, that a contractor, on the recommendation of an AFRH-W official, had hired full-time employees to work in the post office who were less qualified than himself. Undeniably if Cavanaugh was working for a period that he preferred to be paid for, (He stated that he worked 120 hours the first stipend month) he was working unpaid involuntarily.

Another resident, George Lausund, had previous full time employment before going to work in the stipend program. Lausund's stipend schedule entailed 4 hours in the morning five days a week. However, Lausund would get calls to perform duties after his regular schedule to handle afternoon and night arrivals at the guest house. Reasonably he would have preferred to be paid as inferred in his affidavit.(See Lausund affidavit previously submitted).

Some residents accept stipend positions because they feel a dire need for money ($120.00 is a far cry from absolutely no money). These residents get scheduled to work hours in excess of the first 12 hours. In some cases, residents consent to work additional hours because they know that it is expected of them. (Of all stipend employees, it is thought that only one refuses to work more than 12 hours—protesting losing his full-time job). Any time the Agency schedules an unwilling resident to report to work for a period for which he or she will not be paid, **involuntary servitude**

5

occurs. When the stipend program was started at AFRH-W, America's clock was turned back almost 150 years.

The Appellant was asked to work in the stipend program (See Appellant's affidavit, Agency document page 66) and refused on the basis that the program was indisputably a case of involuntary servitude.

## AGENCY'S OFFICIAL TESTIMONY

Agency officials, particularly the COO, have made a mockery of the requirement to provide truthful sworn testimony from the outset of this case. Sherba Essex falsely stated that a decision was made at Resident Services when she knew that it was made by the COO, not resident services. Brock Fowler claimed not to have any first hand information regarding how the appellant lost his job during a period when he, Fowler, was the Director of Personnel. Fowler further testified during Judge Cook's hearing that he, Fowler, was a personnel specialist when the Appellant was fired until he was reminded of his actual position of Director of Personnel. Mr. Timothy Cox, the COO, seems to have invented a game with his testimony, The game: "Guess when I'm telling the truth?"

False statements, some sworn by Mr. Cox are these:

1. That he earlier saved the Appellant's job. Actually he was the person trying to fire the Appellant.

2. That older guards were not doing their jobs and sleeping on duty. Dickerson and Rodriquez, both in the chain-of-command between Cox and the guards testified that they had no knowledge of these allegations.

3. That residents were better served by not having other residents performing security. Security

6

managers and other residents have repudiated this statement. Rodriquez testified differently.

4. That the Appellant was a gate guard. AFRH-W security force had no such position as "gate guard."

5. That Congress mandated that AFRHs be operated on the "model" of other retirement homes. The Appellant could not find the word "model" in U.S.C. 24, 411 nor anything else that he could construe as this mandate.

### APPELLANT'S REQUEST TO BOARD

The Appellant requests that the board reverse the decision of the AJ and decide for the Appellant. Request that the board evaluate the testimony of Cox, Essex and Fowler on the basis of each having knowingly provided false sworn testimony. That any testimony given by Cox, Fowler and Essex be completely disregarded because said testimony is suspect and there is no conclusive proof of its veracity. Request that the board award the Appellant all benefits proscribed in 5 U.S.C. 5596.

Request the board award the Appellant damages in the amount of $200,000.00 to illustrate that the Agency's egregious conduct will not be tolerated in the Government of the United States of America.

Submitted Very Respectfully,


Theodore R. Wilson

2. Enclosures

1. Organizational chart of AFRH-W Security and Investigations Division as it existed Nov. 30, 2002 and on Dec. 3, 2002. The Appellant's position did not change when he went from Competitive Service to Excepted Service. (Undated, Appellant generated)

2. Affidavit of Theodore R. Wilson, June 7, 2007.

7

The Soldiers' and Airmen's Home
3700 North Capitol St. NW
Washington, D.C. 20377

## Department Chart
### Department of Security and Investigations

```
              Chief
         William Waninger
              |
      Operations Sergeant
        Ruben Rodriguez
              |
   _____|_____
  |           |           |
"A" Shift  "B" Shift  "C" Shift
Supervisor Supervisor Supervisor
Sgt Brown  Sgt McCombs Sgt Neary
   |          |           |
Cpl Sterling Off Watson  Off Kowal
   |          |           |
Off Theodore R. Wilson  Off Hamilton  Off Stevenson
  (Resident)
   |          |           |
Off Green   Off Cooper   Off Sallis
                         (Resident)
   |          |           |
Off Rivera  Off Jay     Off Savoy
   |          |           |
Off Scott   Taylor      Off James
                        (Resident)
```

This chart shows the position held by Off. Wilson in both the competitive service and the excepted service.

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| THEODORE R. WILSON<br>Appellant,<br><br>v.<br><br>ARMED FORCES RETIREMENT HOME,<br>Agency | DOCKET NUMBER<br>DC-0351-06-0831-I-1<br><br><br>DATE: June 7, 2007 |

### AFFIDAVIT OF THEODORE R. WILSON

Pursuant to 28 U.S.C. 1746, I do hereby declare and certify under penalty of perjury of the laws of the United States of America that the following is true and correct:

I, Theodore R. Wilson, came to work at what was then called the United States Soldiers' and Airmen's Home in May 2001. Approximately 18 months later, a personnel person dictated a statement for me to write and sign so that I could draw my money out of a retirement fund. At that time, I had no working concept of the significance of competitive service as opposed to excepted service. In my mind set, I was simply completing a form necessary to withdraw my retirement funds. That personnel person did not explain anything about what I was signing or about what impact it could possibly have on my employment status in the future. No one ever informed me that signing that document entailed anything other than withdrawing my money nor did I know or suspect any other consequences.

I declare or certify under penalty of perjury under laws of the United States of America that the foregoing is true and correct.

Executed on June 7, 2007

*Theodore R. Wilson*
Theodore R. Wilson
3700 North Capitol St. NW #128
Washington, D.C. 20011-8400

# CERTIFICATE OF SERVICE

I hereby CERTIFY that a copy of my Petition For Review and attachments was sent as indicated to each of the following.

**Hand Delivered**

<u>Clerk of the Board</u>
The Clerk of the Board
Merit Systems Protection Board
1615 M Street N.W.
Washington, DC 20419

**U.S. Mail**

<u>Agency Representative</u>
Ms. Therese Roy
Department of the Navy
614 Sicard St, SE, Suite 100
Washington Navy Yard
Washington, DC 20374-5072

_June 7, 2007_
(Date)

_Theodore R. Wilson_ (signature)
Theodore R. Wilson
Appellant/Representative