## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THEODORE R. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1585 (HHK) |
| | ) | |
| TIMOTHY COX, | ) | |
| CHIEF OPERATING OFFICER, | ) | |
| ARMED FORCES RETIREMENT | ) | |
| HOME-WASHINGTON, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, Timothy Cox, Chief Operating Officer, Armed Forces Retirement Home-Washington, and the United States of America, by and through undersigned counsel, respectfully move this Court to dismiss Plaintiff's claim for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (a), 12(b)(1), 12(b)(6). In the alternative, Defendants move for summary judgment because there is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of points and authorities and Statement of Material Facts as to Which There is No Genuine Dispute. A proposed Order consistent with this Motion is attached hereto.

Plaintiff, who is proceeding pro se, is hereby advised that failure to respond to this motion may result in the district court granting the motion. See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988). Plaintiff should also take notice that any factual assertions contained in

the affidavits and other attachments in support of Defendants' motion will be accepted by the

Court as true unless the Plaintiff submits his own affidavits or other documentary evidence

contradicting the assertions in the Defendants' attachments.  See Neal v. Kelly, 963 F.2d 453,

457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on
> personal knowledge, shall set forth such facts as would be
> admissible in evidence, and shall show affirmatively that
> the affiant is competent to testify to the matters stated
> therein.  Sworn or certified copies of all papers or parts
> thereof referred to in an affidavit shall be attached thereto
> or served therewith.  The court may permit affidavits to be
> supplemented or opposed by depositions, answers to
> interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but
> the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing
> that there is a genuine issue for trial.  If the adverse party
> does not so respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
_____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendants

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THEODORE R. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1585 (HHK) |
| | ) | |
| TIMOTHY COX, | ) | |
| CHIEF OPERATING OFFICER, | ) | |
| ARMED FORCES RETIREMENT | ) | |
| HOME-WASHINGTON, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

Defendants, Timothy Cox, Chief Operating Officer, Armed Forces Retirement Home-Washington, and the United States of America, submit this Statement of Material Facts As To Which There Is No Genuine Dispute in accordance with Local Rule 7(h).

1. Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA"), and the Rehabilitation Act, 29 U.S.C. § 701 et seq. See Amended Complaint ("Am. Compl.") at ¶ 3.

2. At the time of the filing of the Complaint, Plaintiff was seventy-four (74) years of age. See Compl. at ¶ 2.

3. Plaintiff is a resident of the Armed Forces Retirement Home in Washington, D.C. ("AFRH-Washington" or "Agency"). Id.

4. The AFRH-Washington provides residences and related services to retired former members of the Armed Services. See 24 U.S.C. § 411(b).

5. AFRH-Washington is funded by a Trust which, in turn, is funded with monthly fees

paid by residents, monies received from gifts, monies received from the disposition of property or facilities, monies paid as fines and forfeitures under 10 U.S.C. § 2772, deductions from the pay of servicemen, and interest paid on investments made by the Trust.  24 U.S.C. § 419.  See Exhibit K  (Initial Decision, Merit Systems Protection Board, Docket No. DC-0351-06-0831-I-1, dated May 11, 2007) at p. 9.

6.  AFRH-Washington does not take appropriations.  Exhibit A (Hearing Transcript, Theodore R. Wilson v. Armed Forces Retirement Home, MSPB Docket No. DC-0752-06-0831-I-1) at p. 11.

7.  At the time relevant to this action, there was another Armed Forces Retirement Home in Gulfport, Mississippi ("AFRH-MS").  See id. at 13; Exhibit D (Affidavit of Timothy Cox, Chief Operation Officer, Armed Forces Retirement Home, dated 1/24/05) at p. 1.

8.  On  May 21, 2001, Plaintiff was a career conditional security guard at AFRH-Washington with Competitive Service status.  Exhibit B (Notification of Personnel Action, effective 5/21/01).

9.  At the time, Plaintiff was not a resident of AFRH-Washington. See Am. Compl. at ¶ 9.

10.  On or about December 1, 2002, upon becoming a resident at AFRH-Washington, Plaintiff became a Resident-Employee security guard, in the Resident Employee Program, with Excepted Service status.  Exhibit N (Notification of Personnel Action, effective 12/1/02).

11.  In order to work and reside at the home - - be a Resident Employee - - Plaintiff was required to be in the Excepted Service.  See Fed. Reg. 71, 183 (Dec. 22, 2003).

12. Over a period of about nine years, the trust fund had gone from $156 million down to $94 million. See Exhibit A. at p. 11

2

13.  It was determined that the Resident Employee Program in Washington D.C. was costing "over a million dollars a year . . . ."  Id. at 16.

14.  In light of the poor financial position of the Trust Fund, Defendants made a business decision that AFRH-Washington should abolish the Resident Employee Program and implement a Stipend Program.  See Exhibit K.

15.  In or about August 2003, Plaintiff was informed that, consequently, he would be dismissed from his job as a Resident-Employee security guard.  Exhibit I (Individual Complaint of Discrimination with the Department of Treasury) at p. 3.

16.  On November 4, 2003, all Resident Employees were informed in writing that the Resident Employee Program would be abolished.  Exhibit E (Affidavit of Theodore R. Wilson); Exhibit F (Correspondence from William C. Waninger, Chief, Security & Investigations Division, Resident Services, Armed Forces Retirement Home-Washington, dated 11/4/03); Exhibit G (Complainant's Response to Agency's Initial Discovery Request, dated 7/14/05) at p. 2.

17.  Instead of using the Resident Employee Program, AFRH-Washington implemented a Resident Stipend Program in which the residents could participate if they so chose.  These resident employees would be paid $120 per month for their services.  Exhibit D at p. 2; Exhibit A at pp. 15, 20.

18.  The Resident Employee Program, including Plaintiff's position, were abolished effective January 4, 2004.  Exhibit F.

19.  On September 13, 2006, Plaintiff filed a Complaint in the United States District Court.  See Docket Entry No. 1.

20.  On November 13, 2007, Plaintiff mailed to the Court and Defendants a Request to

3

Amend Complaint, and attached an Amended Complaint.

      21.  On January 17, 2008, the Court permitted Plaintiff to Amend the Complaint.

                    Respectfully submitted,


    /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


    /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

    /s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THEODORE R. WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1585 (HHK)** |
| | ) | |
| **TIMOTHY COX,** | ) | |
| **CHIEF OPERATING OFFICER,** | ) | |
| **ARMED FORCES RETIREMENT** | ) | |
| **HOME-WASHINGTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. FACTS

Plaintiff's Amended Complaint alleges that he was discriminated against on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et seq., and in violation of the Rehabilitation Act, 29 U.S.C. § 791, et seq.[1] See Am. Compl. at ¶ 3. More specifically, Plaintiff appears to claim that he was discriminated against: 1) when his position was converted from Competitive Service to

---

[1] The Armed Forces Retirement Home is an independent establishment in the Executive Branch. The purpose of the AFRH is to provide residences and related services to certain retired and former members of the Armed Forces. 24 U.S.C. § 411. The AFRH is funded by a Trust which is funded with monthly fees paid by residents, monies received from gifts, monies received from the disposition of property or facilities, monies paid as fines and forfeitures under 10 U.S.C. § 2772, deductions from the pay of servicemen, and interest paid on investments made by the Trust. 24 U.S.C. § 419. See Exhibit K (Initial Decision, Merit Systems Protection Board, Docket No. DC-0351-06-0831-I-1, dated May 11, 2007) at p. 9. The AFRH operates two homes; one in Washington, DC and one in Gulfport, MS. See Exhibit A at p. 13; Exhibit D at p.

1

Excepted Service Status when he became a Resident Employee security guard at the Armed

Forces Retirement Home in Washington, D.C. ("AFRH-Washington"), Am. Comp. at ¶ 13; and

2) when he was dismissed from his position as a Resident Employee security guard at AFRH-

Washington.  Id. at ¶ 1.[2]

On May 21, 2001, Plaintiff was a career conditional security guard, in the Competitive

Service, at AFRH-Washington.  Exhibit B.  At the time, he did not reside at AFRH-Washington.

See Am. Compl. at ¶ 9.  Plaintiff "*applied for* and *accepted* an Excepted Service Security Guard

position as a 'resident-employee' effective December 1, 2002."  Exhibit K (Merit Systems

Protection Board Initial Decision, May 11, 2007)(emphasis added).  See Exhibit O ( Application

---

[2]Title 24, United States Code, Section 412 states:
    (a) Persons eligible to be residents
    Except as provided for in subsection (b) . . . the following persons who served as
    members of the armed Forces, at least one-half of whose service was not active
    commissioned service . . . are eligible to become residents of the Retirement Home.
        (1) Persons who - -
            (A) are 60 yeas of age or over; and
            (B) were discharged or released from service in the Armed Forces under
            honorable conditions after 20 or more years of active service.
        (2) Persons who are determined under rules prescribed by the Chief Operating
        Officer to be incapable of earning a living because of a service-connected
        disability incurred in the line of duty in the Armed Forces.
        (3) Persons who - -
            (A) served in a war theater during a time of war declared by Congress . . .;
            (B) were discharged or released from service in the Armed Forces under
            honorable conditions; and
            (C) are determined under rules prescribed by the Chief Operating Officer
            to be incapable of earning a livelihood because of injuries, disease, or
            disability.
        (4) Persons who - -
            (A) served in a women's component of the Armed Forces before June 12,
            1948; and
            (B) are determined under rules prescribed by the Chief Operating Officer
            to be eligible for admission because of compelling personal
            circumstances.

for Resident Employment and Non-Competitive Referral of Eligibles); Exhibit H (Notification

of Personnel Action, effective 12/1/02).  He resigned from his Competitive Service position

effective November 30, 2002.  Id.  On December 1, 2002, Plaintiff became a resident of AFRH-

Washington.[3]  On December 2, 2002, Plaintiff wrote a letter to the Office of Personnel Service

which indicated: "I resigned my status as a civil service employee."  Exhibit N.  He asked to

withdraw all funds he invested in the Civil Service Retirement System.  Id [4]

    In 2003, the Chief Operating Officer ("COO") of AFRH-Washington determined that

the Resident Employee Program would be abolished.  Id.; Exhibit D; Exhibit A at p. 20.  This

decision was made because of a depletion of the Trust Funds used to operate the AFRHs,[5] and

because the COO wanted to make certain operating programs consistent between AFRH-

Washington and AFRH-MS.  Exhibit D.  In place of the Resident Employee Program, AFRH-

_____

[3]Residents of AFRHs pay a fee which is tied to, among other things, a resident's income.  24
U.S.C. § 414.  Independent Living Residents pay 35% of their income.  Exhibit A at p. 16; Am.
Compl., Exhibit 5.  However, the salary of a Resident Employee is not calculated as part of
income for purposes of contribution to the trust fund.  Id.; see Am. Compl., Exhibit 4.

[4]In his Amended Complaint, Plaintiff states that he "had no knowledge of the difference"
between the Excepted Service and Competitive Service.  Am. Compl. at ¶ 9.  However, it is
undisputed that Plaintiff "*applied for* and *accepted* an excepted service Security Guard position .
. ." Exhibit K at p. 2.  In addition, on his own accord, in order to withdraw his Civil Service
Retirement funds, Plaintiff drafted handwritten correspondence, to the Office of Personnel
Service, specifically indicating that he had "resigned [his] status as a civil service employee."
See Exhibit P (Correspondence from Plaintiff to Office of Personnel Services dated December 3,
2002).  It is disingenuous for Plaintiff to now claim that he did not know the difference between
Excepted Service and Competitive Service for purposes of this lawsuit when it is clear that he
knew the difference between the services when it was to his advantage in order to withdraw
funds.

[5]The Trust Fund had been reduced from $156 million dollars to less than $96 million dollars in
less than ten years.  See Exhibit D; Exhibit K at p. 10.

Washington would implement a Resident Stipend Program.[6]  Under this program, Resident

Employees were to be paid $120 per month for their services.[7]  Id.  This program was strictly

voluntary.

In or about August of 2003, Plaintiff was informed, by his supervisor, that the Resident

Employee Program would be abolished, and that he would be eligible for the Resident Stipend

Program.  Exhibit I at p. 3.  On November 4, 2003, all resident employees, including Plaintiff,

were informed in writing that the Resident Employee Program would be abolished.  Exhibit F.

On January 3, 2004, Plaintiff was informed that he was terminated from his position in the

Resident Employee Program effective on January 4, 2004.[8]  Am. Compl. at ¶ 10; Exhibit F.

On March 23, 2004, Plaintiff contacted an Equal Employment Opportunity ("EEO")

counselor and alleged that his termination was based upon his age.  Exhibit J (EEO Counselor's

Report) at p. 1.  On or about June 7, 2004, Plaintiff filed a formal Complaint of Discrimination.

Exhibit I.  The complaint was accepted and investigated in accordance with 29 C.F.R. §

1614.108.  Plaintiff requested a hearing before an administrative judge.[9]

---

[6]This program was in operation at AFRH-MS.  Exhibit A at pp. 14, 15.  It was determined to be the more cost effective of the Resident Employee Programs.  See Exhibit K at p. 10.

[7]The resident stipend program provided that Resident Employees could work a minimum number of hours per month and receive $120.00 per month for their services.  If residents wished to work additional hours, that would be on a voluntary basis.  See Exhibit K at p. 10.

[8]Subsequent to his termination, Plaintiff was issued a Standard Form 50 which inaccurately indicated that he had resigned from his Resident Employee position.  Exhibit Q (Notification of Personnel Action dated February 2, 2002).  On May 18, 2004, Plaintiff was issued a Standard Form 50 which correctly indicated that his position was abolished.  Exhibit C.

[9]The parties engaged in discovery.

4

On May 24, 2006, the Administrative Judge issued a Decision finding that AFRH-Washington had not discriminated against Plaintiff.  The Administrative Judge issued an Order Entering Judgment on May 30, 2006.  On June 20, 2006, AFRH-Washington issued a Final Order implementing the Administrative Judge's Decision.

On September 2, 2006, the Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB" or "Board") alleging that the AFRH had improperly terminated his employment.  The MSPB determined that it had jurisdiction over the appeal as well as the claim of age discrimination as a mixed case appeal of a separation by reduction in force ("RIF").  Exhibit K at pp. 1-2.  In or about October 2006, Plaintiff also filed a Veterans Employment Opportunity Act ("VEOA") claim with the Department of Labor ("DOL") alleging a violation of his veteran's preference. The DOL dismissed this claim as untimely.  See Exhibit L (Correspondence from Stanley K. Williams, Director of Veterans' Employment & Training Services, U.S. Department of Labor, dated October 16, 2006).

On March 16, 2007, a hearing was held before the MSPB.  The material issues were:

(1) [w]hether the agency established by a preponderance of the evidence that it conducted a RIF for one of the reasons authorized in 5 C.F.R. § 351.201(a)(2) []; (2) whether the agency established, by preponderant evidence that it properly applied the Office of Personnel Management RIF regulations in 5 C.F.R. part 351 []; (3) whether an[y] agency errors in failing to comply with applicable RIF regulations had an adverse effect on [Plaintiff's] substantive entitlements[]; and (4) whether [Plaintiff] established by a preponderance of the evidence that the agency committed age discrimination when it terminated his employment.

Exhibit K at p. 4.

At the hearing, the agency stipulated that it had conducted a de facto RIF, and did not

follow appropriate RIF procedures.  Id. at 5.  However, at the time that the RIF occurred, the

AFRH believed that resident employees of AFRH-Washington were not governed by 5 C.F.R. §

351, and did not have the right to appeal such an action to the Board.

On May 11, 2007, the Administrative Judge issued an Initial Decision finding that the

Agency had conducted the RIF for an authorized reason in accordance with 5 C.F.R. §

351.201(a)(emphasis added).  Id. at 9.  Although the agency conceded that it had not followed

RIF regulations, the Administrative Judge found that Plaintiff was not harmed by the failure to

follow those regulations.  Id. at 11-12.  The Administrative Judge also found that the Agency had

not discriminated against Plaintiff on the basis of his age when it terminated him from his

position as security guard.  Id. at 15-17.  Finally, the Administrative Judge upheld the DOL's

decision that the VEOA claim was untimely.[10]   See id. at 7-9.

On June 7, 2007, Plaintiff filed a petition for review.  That petition was denied by the full

Board on September 26, 2007.  Exhibit M (Final Order, Merit Systems Protection Board, Docket

No. DC-0351-06-0831-I-1, dated September 26, 2007).

On January 17, 2008, Plaintiff's Amended Complaint was filed.  Plaintiff alleged that he

was discriminated against in violation of the Age Discrimination in Employment Act and the

Rehabilitation Act.   See Docket Entry No. 24.

_____

[10]Pursuant to 5 U.S.C. § 3330(a)(2)(A), a VOEA complaint must be filed with the DOL within
60 days of the alleged violation.  On November 4, 2003, the agency informed Plaintiff, in
writing, that it was terminating his position, and his last day of work would be January 4, 2004.
Exhibits E and F.  Plaintiff filed a complaint with the DOL, in October of 2006, nearly three
years after he was informed of the termination in writing.  See Exhibit K at p. 8.

## II.  LEGAL STANDARDS

### A.  Standard of Review for Motions to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the court's jurisdiction." Gardner v. U.S., No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001) (quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987)); see also 4 Wright & Miller:  Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")  A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint. Herbert v. Nat'l Acad. of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; see also Cureton v. U.S. Marshal Serv., 322 F. Supp.2d 23 (D.D.C. 2004). "At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - - its very power to hear the case." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly).  Hence, the focus is on the language in the complaint, and whether that language sets

7

forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. Kowal, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." Id.

### B. Standard of Review for Motions for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.

8

In <u>Anderson</u> the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

<u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Laningham v. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### C. **Standard for Asserting Claim for Relief**

Under the Federal Rules of Civil Procedure, the principal function of the complaint is to give the defendant fair notice of the claims asserted so that the defendant can make an adequate response, either by answer or dispositive motion. Here, the complaint fails to meet even these minimum requirements.

Rule 8(a) of the Federal Rules, states that a claim:

[S]hall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a). "The purpose of [Rule 8(a)] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." <u>Brown v.</u>

Califano, 75 F.R.D. 497, 498 (D.D.C. 1977) (citing 2A Moore, Federal Practice ¶ 8.13; 5 Wright

& Miller, Federal Practice and Procedure, § 1217). "Beyond this, the rule serves to sharpen the

issues to be litigated . . . ." Brown, 75 F.R.D. at 498 (dismissing pro se plaintiff's complaint

because it failed to reasonably inform the adverse party of the cause of action).

### III. ARGUMENT

#### A. With Respect to Plaintiff's Claim Under the Rehabilitation Act, He Has Failed to Comply With Rule 8(a) of the Federal Rules of Civil Procedure

Plaintiff claims that he has been discriminated against in violation of the Rehabilitation

Act. Am. Compl. at ¶ 3. The Rehabilitation Act prohibits discrimination against federal

employees based upon qualifying disabilities. 29 U.S.C. § 701 et seq. To sustain a disability

claim pursuant to the Rehabilitation Act, a plaintiff must as a threshold matter establish that he

or she has a disability. See Lester v. Natsios, 290 F.Supp.2d 11 (D.D.C. 2003) (citing Mahon v.

Crowell, 295 F.3d 585, 589 (6th Cir. 2002); Stein v. Ashcroft, 284 F.3d 721, 724 (7th Cir.

2002)). However, no where in Plaintiff's Amended Complaint does he indicate that he has a

disability.

Plaintiff has stated that "[t]his action is being filed to supplement a previously filed civil

action under Title VII . . . and the Rehabilitation Act." Am Compl. at ¶ 3. However, in the

previously filed Complaint, Plaintiff alleged that he "was fired from his employment in violation

of the Age Discrimination in Employment Act of 1967[,]" and explained how he believed the

Age Discrimination Action was violated. Complaint at ¶¶ 1, 8. In the Complaint, Plaintiff did

state that his "action was being filed . . . after . . . notification . . . of his right to institute a civil

action under Title VII . . . and the Rehabilitation Act." Id. at ¶ 5. But, Plaintiff failed to mention

the Rehabilitation Act again or even attempt to explain how that act was violated.

10

Federal Rule of Civil Procedure 8(a) states that a claim shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Neither Plaintiff's Amended Complaint nor his Complaint contain a "short and plain statement of [a] claim [under the Rehabilitation Act] showing that [the Plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Plaintiff lists statutes which he alleges have been violated, see Amend. Comp. ¶ 24, he has failed to provide a statutory citation for the Rehabilitation Act.  Clearly, Plaintiff has failed to meet the liberal requirement of Rule 8(a), and any claim of discrimination under the Rehabilitation Act must fail.

### B.  Plaintiff Also Has Failed to Exhaust His Administrative Remedies With Respect to His Claims Under the Rehabilitation Act.

Plaintiff failed to assert any claim of a violation of the Rehabilitation Act in the proceedings at the administrative level.  See Exhibit J.  In fact, the section of the Equal Employment Opportunity Counselor's Report which is reserved for indicating the basis for the alleged discrimination, indicates that physical and mental disability are inapplicable.  Id. Plaintiff's failure to indicate that disability was a basis for his claim bars him from attempting to initiate a civil action as to that claim now.  See Brown v. Gen. Serv. Admin., 425 U.S. 820, 832 (1976) (to preserve right to maintain employment discrimination suit, claimant must exhaust administrative remedies by filing claim of discrimination with allegedly offending agency).  See also Koch v. Donaldson, 2004 WL 758957, *1 (D.C. Cir. 2004)(citing Leorna v. Dep't of State, 105 F.3d 548, 550 (9th Cir. 1997).  Therefore, it is clear that Plaintiff's purported claim under the Rehabilitation Act must be dismissed for failure to exhaust administrative remedies.

**C. Plaintiff Cannot Establish a Prima Facie Case of Discrimination Based Upon Age**

Plaintiff claims that he was discriminated against, based upon his age:  1) when  his position was converted from Competitive Service to Excepted Service Status when he became a Resident Employee security guard at AFRH-Washington, Am. Compl. at ¶ 13; and 2) when he was terminated from his position as a Resident Employee security guard at AFRH-Washington. Id. at ¶ 1.

The ADEA provides, in relevant part, that:

[all] personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies . . . shall be made free from any discrimination based on age.

Allegations of age discrimination are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)(McDonnell Douglas standard applies to ADEA claims).  To establish a prima facie case of discrimination based upon age, a plaintiff must show that: (1) he belonged to a statutorily-protected group; (2) he suffered an adverse employment action; (3) under circumstances giving rise to an inference of discrimination. Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006).  See Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (citing Brown v. Brody 199 F.3d 446, 452 (D.C. Cir. 1999); Forman v. Small, 271 F.3d 285, 292 (D.C. Cir.  2001); May v. Shuttle, Inc., 129 F.3d 165, 172 (D.C. Cir. 1997), cert. denied, 524 U.S. 927 (1998); Harding v. Gray, 9 F.3d 150, 152 (D.C. Cir. 1993); Wren v. Gould, 808 F.2d 493, 500 (D.C. Cir. 1987).

If plaintiff succeeds in establishing a prima facie case, the burden shifts to the agency to articulate a legitimate, non-discriminatory reason for its actions.  Texas Dep't of Cmty. Affairs

12

v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas, 411 U.S. at 802 (holding that burden shifts to defendant to articulate legitimate, nondiscriminatory reasons for its challenged actions, once plaintiff makes out a prima facie case of discrimination).  See Burdine, 450 U.S. at 252-53; Harding v. Gray, 9 F.3d 150, 152 (D.C. Cir. 1993); Bd. of Trustees of Keene State Coll. v. Sweeney, 439 U.S. 29 (1978); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).  The Agency's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext."  Burdine, 450 U.S. at 258.

"[I]n producing nondiscriminatory reasons for its challenged action, the employer is not obligated to support these reasons with objective evidence sufficient to satisfy the preponderance of the evidence standard." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). The ultimate burden of proving intentional discrimination always rests with the plaintiff. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); accord St. Mary's Honor Ctr., 509 U.S. at 511 (1993) (holding that a complainant "at all times bears the ultimate burden of persuasion") (internal quotation marks and citations omitted).  Thus, the defendant's burden is satisfied if it simply explains what it has done or produces evidence of legitimate, nondiscriminatory reasons. St. Mary's Honor Ctr. , 509 U.S. at 502.  A "subjective reason can be legally sufficient, legitimate and nondiscriminatory if the [agency] articulates a clear and reasonably specific factual basis" for its subjective opinion.  Bowdre v. Richardson, 131 F.Supp.2d 179, 188 (D.D.C. 2001).

Notably, a defendant is not required to prove that the Agency made the wisest choice, but only that the reasons for the decision were non-discriminatory.  See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986)(citing Burdine, 450 U.S. at 258-59).  Employers have

13

broad discretion to set policies and carry out personnel decisions, and the District of Columbia Circuit has emphasized that a court "may not 'second-guess" an employer's personnel decision absent demonstrably discriminatory motive."  Fishbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  See McPherson v. Dep't of Water Resources, 734 F.2d 1103 (5th Cir. 1984)("We do not sit to revise employment decisions taken hastily or for insufficient reasons, only those taken for illegal ones.");  see also, Marshall v. Fed. Express Corp.,130 F.2d 1095, 1100 (D.C. Cir. 1997); Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997).  The Supreme Court has stated," [c]ourts are generally less competent than employers to restructure business practices and unless mandated to do so by Congress they should not attempt it."  Furnco Construction Corp. v. Waters, 438 U.S. 567, 578 (1978).  In a discrimination claim it is the employer's motivation and intent which is at issue, not his business judgment.  Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987).

Once the agency has articulated a legitimate, non-discriminatory reason for its actions, the prima facie inference of discrimination drops from the case.  St. Mary's Honor Ctr., 509 U.S. at 510-11; Burdine, 450 U.S. at 255.  Plaintiff then must prove that the agency's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination. Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 804; St. Mary's Honor Ctr., 509 U.S. at 507-08; Aka, 156 F.3d at 1288.  The burden of persuasion that discrimination motivated the agency's actions remains at all times with the plaintiff.  St. Mary's Honor Ctr., 509 U.S. at 507; Burdine, 450 U.S. at 253; Aka, 156 F.3d at 1289; see also Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003).  Put simply, plaintiff must show that, but for his age, the adverse action of which he complains would not have occurred.  See Ware v. Howard Univ., Inc., 816 F. Supp. 737, 750 (D.D.C. 1993).  Thus, even if the plaintiff establishes a prima facie

case, summary judgment is still available to the defendant if it sufficiently articulates a nondiscriminatory reason for the challenged action, and the plaintiff fails to present objective evidence that undermines the defendant's proffered explanation for its actions.  See Aka, 156 F.3d at 1289.  Finally, merely casting doubt on an employer's stated reason for its employment decision is insufficient to establish pretext.  Id.; see Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 677 (7th Cir.1997) ("[A] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination.")(quotations and citations omitted); Reeves, 530 U.S. at 147 ("It is not enough ... to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination.").

### 1.  Conversion from Competitive Service to Excepted Service Status Upon Becoming a Resident Employee Security Guard.

Plaintiff claims that he was discriminated against when his position was changed from Competitive Service to Excepted Service.  However, Plaintiff cannot establish a prima facie case of discrimination.  Plaintiff is a member of a statutorily protected group because he is over forty years of age.  However, Plaintiff did not suffer an adverse employment action.  Rather, Plaintiff voluntarily "*applied for* and *accepted* an Excepted Service Security Guard position as a 'resident-employee.'" Exhibit K (emphasis added); Exhibit O.  Upon being selected for the position, Plaintiff resigned from his Competitive Service position.  See Exhibit H (Notification of Personnel Action, effective 12/1/02).

Assuming arguendo that Plaintiff suffered an adverse employment action, it did not occur under circumstances giving rise to an inference of discrimination.  The position of Resident Employee was designated by the Office of Personnel Management as an  Excepted Service position in the Executive Branch.  68 Fed. Reg. 71,183 (Dec. 22, 2003).  Moreover, the position

is open only to residents of the home.[11]  One cannot be a resident of the home and remain in the

Competitive Service.  Therefore, because Plaintiff became a resident at AFRH-W, and because

he voluntarily chose to continue his work as a security guard, it was required that his

employment status be converted from Competitive Service to Excepted Service.  Therefore, it is

clear that the change in Plaintiff's status did not occur under circumstances giving rise to an

inference of discrimination, and, Plaintiff cannot establish a prima facie case of discrimination.[12]

Even if Plaintiff could establish a prima facie case of discrimination, however, the

agency had a legitimate, non-discriminatory reason for its actions.  In order to work and reside at

the home - - be a Resident Employee - - Plaintiff was required to be in the Excepted Service.

Therefore, the Agency properly converted Plaintiff from Competitive Service to Excepted

Service status.[13]  Moreover, Plaintiff cannot prove that the agency's reason for this action was a

pretext for unlawful discrimination.[14]  See Burdine, 450 U.S. at 253.

2.  Abolishment of the Position of Resident Employee Security Guard at AFRH-
        Washington.

Plaintiff claims that he was discriminated against when he was dismissed as a Resident

---

[11] Before the MSPB, Ruben Rodriguez, a security officer at AFRH-Washington testified that, from 1990 to 1996, he was living at the home, and was a resident employee. However, "once [he] became a civilian employee[, he] was not authorized to be a resident any longer."  Exhibit A at p. 74.

[12] While Plaintiff claims that other individuals are security guards at AFRH-W and are not in the Excepted Service, these individuals are not also residents of AFRH-W.

[13] To the extent that Plaintiff is claiming that his conversion from Competitive Service to Excepted Service status was improper on any basis, Plaintiff's claim fails.  See 68 Fed. Reg. 71,183 (Dec. 22, 2003).

[14] Plaintiff's appeal to the MSPB regarding his conversion from Competitive Service to Excepted Service status was untimely.  See Exhibit K at p. 4.  However, the Board found that Plaintiff established good cause for the delay, and heard Plaintiff's discrimination claim and termination appeal.  See id. at 3-4.  Each of these claims was denied.

Employee security guard at AFRH-Washington.  Plaintiff states that he did not know he was "sign[ing] away his . . . competitive status.  [Therefore, he] should have retained his statue (sic) as a competitive service employee with all the attendant rights and privileges including R-I-F privileges."[15]  Am. Compl. at ¶ 13.

Again, Plaintiff cannot establish a prima facie case of discrimination.  Plaintiff is a member of a statutorily protected class.  However, although Plaintiff claims that he suffered an adverse action under circumstances giving rise to an inference of discrimination, the Resident Employee Program was abolished for **all** Resident Employees of the Armed Forces Retirement Home in Washington, D.C., not just Plaintiff.[16]  Therefore, Plaintiff cannot establish that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination based upon age.  See Stella, 284 F.3d at 145.

Assuming arguendo that Plaintiff could establish a prima facie case of discrimination, which he cannot, the Agency, nevertheless, had legitimate non-discriminatory reasons for removing Plaintiff from his position.  Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 804; see also St. Mary's Honor Ctr., 509 U.S. at 507-08; Aka, 156 F.3d at 1288.

In light of the poor financial position of the Trust Fund, Defendants made a business

---

[15]Although Plaintiff makes no such argument in his Amended Complaint or Complaint, at the administrative level, he contended that he was improperly separated from his position through a Reduction in Force.  See Exhibit A at p. 1.  The Agency acknowledged that it conducted a de facto RIF and "did not follow any RIF regulations when it abolished [Plaintiff's] position . . . ." Id. at 3, 4.  However, the Merit Systems Protection Board Administrative Judge found that "the failure to follow RIF regulations had no adverse effect on [Plaintiff's] substantive rights.  Id. at 12.

[16]Indeed, as a cost saving measure, Reductions in Force took place throughout AFRH-Washington.  Id. at 17. There were close to 1,000 residents at AFRH-Washington, and 877 of them were employees.  Id.

17

decision that AFRH-Washington should abolish the Resident Employee Program and implement

a Stipend Program.  AFRH-Washington is funded by a Trust which, in turn, is funded with

monthly fees paid by residents, monies received from gifts, monies received from the disposition

of property or facilities, monies paid as fines and forfeitures under 10 U.S.C. § 2772, deductions

from the pay of servicemen, and interest paid on investments made by the Trust.  24 U.S.C. §

419.  See Exhibit K at p. 9.  AFRH-Washington does not take appropriations.  Exhibit A at p. 11.

According to the Chief Operating Officer of AFRH-Washington, Timothy Cox, "[t]he trust fund

had gone from $156 million down to $94 million over a period of about nine years.  So Congress

stepped in and said we need to reevaluate how the home is operating."  Id. at 11.  It was then

determined that the Resident Employee Program in Washington D.C. was costing "over a

million dollars a year . . . ."  Id. at 16.[17]

Nevertheless, in support of his argument that the Resident Employee Program should not

have been abolished, Plaintiff cites to a letter written to the Office of Personnel Management, by

Joan R. Esch, Personnel Officer.  This letter indicated that to replace Resident Employees with

civilian employees "would cost an additional $500K per annum."  See Am. Compl., Exhibit 5.

However, this letter was written on March 24, 1989 - - fourteen years ago.  Moreover, as is

indicated in the sworn affidavit of Timothy Cox, the balance of the Trust Fund "had declined

from $156 million in 1995 to $94 million in 2003."  Exhibit D.  Consequently, "[t]he resident

employment program was costing  . . . one million dollars a year.  It was more cost effective to

---

[17]In September of 2002, when Timothy Cox was appointed, the salaries of the resident
employees at AFRH-Washington "ranged from $30,000 to $60,000 and $70,000."  Exhibit A at
p. 17.

have the jobs filled by GS employees or contract out the jobs." Id.[18]  A de facto reduction in force performed for economic reasons is not discrimination based upon age.  Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).

In addition, AFRH-Washington and AFRH-MS were operating under different systems. While AFRH-Washington used Resident Employees, AFRH-Mississippi used a Resident Stipend System to pay the employees who were also residents of the home.  After evaluations from successive Inspectors General, see Exhibit A at p. 14, it was determined that, because the homes were each part of one agency, the AFRHs should employ its Resident Employees is a consistent manner.  Id.  Consequently, the Resident Employee Program was abolished, and the Resident Stipend Program was instituted at AFRH-Washington.  Id. at 21.

Therefore, there is simply no evidence to suggest that Plaintiff was removed from his position as Resident Employee, at this retirement facility, on the basis of his age.[19]  Plaintiff merely relies on his unfounded personal beliefs and suppositions [which are] legally insufficient to establish pretext." Rozkowiak v. Baxter Healthcare Corp., 1998 WL 422284, *5 (N.D. Ill. July 22, 1998) (citing Kizer v. Childrens' Learning Ctr.,962 F.2d 608, 613 (7th Cir. 1992).  See Saunders v. DiMario, No. 97-1002, 1998 WL 525798, at *4 (D.D.C. Aug. 14, 1998), aff'd, 194 F.3d 175 (D.C. Cir.1999) ("Plaintiff has otherwise offered the type of self-serving allegations

---

[18]In addition, it was important to have the best trained individuals operating in these positions. For instance, "[t]he national defense program and NORAD use[] [the] site [of AFRH-Washington,] when [the nation] go[es] to level orange [in order] to bring in hummer-launched missiles to protect everything from the Capitol to the White House." Id. at 24.  So, it was important to have the best trained security guards manning the security gate; the one penetration point of the 272 acre gated property.  Id. at 24-25.  It also was determined to be more cost-effective to have a private contractor man the gate.  Id. at 25.

[19]Indeed, on March 16, 2007, Ruben Rodriguez, a civilian security officer at AFRH-Washington who had previously been the Acting Chief of Security, was  69 years old.  Id. at 72, 77.

that are simply insufficient to establish pretext."); <u>Kariotis,</u> 131 F.3d at 677(("rebuttal [of an employer's proffered reason for its action] must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination.")).  Moreover, Plaintiff cannot present any objective evidence that the agency's <u>two</u> proffered reasons for its action were pretexts for unlawful discrimination.  <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglas</u>, 411 U.S. at 804; <u>see also</u> <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 507-08; <u>Aka</u>, 156 F.3d at 1288.  Therefore, Plaintiff's claim that he was removed from his position as Resident Employee at AFRH-Washington because of his age must fail.[20]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's claims of discrimination based upon alleged violations of the Age Discrimination in Employment Act and the Rehabilitation should be dismissed.  <u>See</u> Fed. R. Civ. P. 8(a), 12(b)(1), 12(b)(6).  In the alternative, summary judgment should be granted on Plaintiff's claim because no genuine issue of material fact exists, and Defendants are entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56

---

[20]In a Response to Defendant's Motion to Dismiss which may have been inadvertently attached to Plaintiff's Amended Complaint, Plaintiff states that "[t]he Agency issued a brochure to prospective residents through 2002[,]" which contained a page that described the Resident Employee Program.  Plaintiff argues that, because the brochure indicated that the Resident Employee Program was available to interested residents, "[t]he Agency has a legally binding obligation to honor its policy statements" and continue to employ the Resident Employees indefinitely.  <u>Id</u>.  However, Plaintiff did not assert this claim at the administrative level.  Moreover, nothing Plaintiff has cited to indicates that employment in the Resident Employment Program was permanent for Plaintiff or any other Resident Employee at AFRH-Washington.

Respectfully submitted,


 /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 514-6531
Attorneys for Defendant



Of Counsel:
Therese Roy Epstein
Attorney Advisor
Department of the Navy
1301 South Gate Road
Arlington, Virginia  22203

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March, 2008, I caused the foregoing to be

served, via first class mail, postage prepaid, to plaintiff *pro se* as follows:

Theodore R. Wilson
3700 North Capitol Street, N.W., #128
Washington, D.C.  20011-8400

 

 

 

    /s/                            
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THEODORE R. WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1585 (HHK)** |
| | ) | |
| **TIMOTHY COX,** | ) | |
| **CHIEF OPERATING OFFICER,** | ) | |
| **ARMED FORCES RETIREMENT** | ) | |
| **HOME-WASHINGTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**ORDER**

Upon consideration of Defendants' Motion to Dismiss or, in the Alternative, for

Summary Judgment, Plaintiff's Opposition, and the entire record herein, it is this _____ day of

_____, 2008,

ORDERED that Defendants' Motion to Dismiss be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

with prejudice.

                                        _____
                                        UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THEODORE R. WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1585 (HHK)** |
| | ) | |
| **TIMOTHY COX,** | ) | |
| **CHIEF OPERATING OFFICER,** | ) | |
| **ARMED FORCES RETIREMENT** | ) | |
| **HOME-WASHINGTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Upon consideration of Defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment, Plaintiff's Opposition, and the entire record herein, it is this _____ day

of _____, 2008,

ORDERED that Defendants' Motion for Summary Judgment be and is hereby

GRANTED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Marian L. Borum
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, DC  20530

Theodore R. Wilson
3700 North Capitol Street, N.W., #128
Washington, D.C.  20011-8400