# Theodore R. Wilson

## v.

# Timothy Cox, Chief Operating Officer, Armed Forces Retirement Home -Washington et al., Civil Action No. 06-1585 (HHK)

# Exhibit K

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

THEODORE R. WILSON,
                Appellant,

      v.

ARMED FORCES RETIREMENT
    HOME,
                Agency.

DOCKET NUMBER
DC-0351-06-0831-I-1[1]

DATE: May 11, 2007

Theodore R. Wilson, Washington, D.C., pro se.

Therese Roy, Esquire, Washington, D.C., for the agency.

### BEFORE
Thomas P. Cook
Administrative Judge

### INITIAL DECISION

On September 2, 2006, the appellant filed a Board appeal alleging the Armed Forces Retirement Home (AFRH) had improperly terminated his employment effective January 3, 2004, from the position of Security Guard, AD-0085-10, at the AFRH facility in Washington, D.C. The Board has jurisdiction over the appellant's termination appeal and his associated claim of age discrimination as a mixed-case appeal of a separation by reduction in force (RIF).

---

[1] The docket number has been changed from DC-0752-06-0831-I-1 to accurately reflect that this is an appeal of a separation by reduction in force.

5 C.F.R. § 351.901; 5 U.S.C. § 7702.  For the reasons explained below, AFRH's separation action is AFFIRMED.

## ANALYSIS AND FINDINGS

Background

       The appellant was born on  .  .  and thus was 71 years old on the date of his separation from AFRH.  He enlisted in the United States Air Force in 1950, and he served during the Korean War.[2]  The appellant also served in the Vietnam conflict.  He eventually retired as a Sergeant First Class (E-7) from the U.S. Army in 1974 with approximately 23½ years of military service and a primary specialty in the military police.[3]  AFRH hired the appellant as a Security Guard, GS-0085-5, in the competitive service effective May 21, 2001.  The appellant began residing in the Washington, D.C., AFRH facility in December 2002.  The uncontradicted evidence establishes that he resigned from his competitive service position effective November 30, 2002, after having applied for and accepted an excepted service Security Guard position as a "resident-

---

[2] At the start of the hearing, the parties stipulated to several basic facts relevant to the appeal.  Hearing Tapes (HT), Side 1A.  The parties agreed to stipulate to proposed facts 1-3 and 5-8 (the appellant disputes proposed fact 4) as proposed by the agency at page 2 of its February 28, 2007, prehearing submissions, with the following exceptions:  (1) Proposed fact 5 is changed to "Appellant resigned his position effective November 30, 2002" and (2) proposed fact 6 is changed to "On November 4, 2003, the Agency provided appellant with a letter stating that his security position would be abolished on or about January 4, 2004."  Id.  Except when I note otherwise, the facts are undisputed.

[3] AFRH does not suggest, nor do I, that the appellant's military career was anything but honorable and a significant service to his country.  We are all grateful for the sacrifice and service of veterans such as the appellant and his friend who accompanied him at the hearing.

employee" effective December 1, 2002.[4]  Appeal File (AF), Tab 12, Subtab 4c; Tab 24, Agency Exhibits 3, 4.

On November 4, 2003, AFRH provided the appellant with a letter stating that his Security Guard position would be abolished and his employment terminated effective January 4, 2004.  AF, Tab 12, Subtab 3(13).  AFRH separated the appellant effective January 3, 1004, and the Standard Form (SF) 50 documenting his termination states, among other things, "Position Abolish by Appr of COO [Chief Operating Officer]."  *Id.*, Subtab 4b.[5]  The appellant was the only excepted service resident-employee Security Guard working at AFRH when AFRH separated him.  AFRH did not provide the appellant with *any* notice of appeal rights when it separated him effective January 3, 2004.  It also is undisputed that AFRH did not follow any RIF regulations when it abolished the appellant's position and separated him.

The appellant filed a formal discrimination complaint on June 7, 2004, alleging AFRH discriminated on the basis of his age when it separated him.  *Id.*, Subtab 3(2).  An administrative judge from the Equal Employment Opportunity Commission (EEOC) issued a decision without a hearing (summary judgment) finding the appellant had failed to prove age discrimination,[6] and AFRH issued a final order June 20, 2006, implementing the EEOC decision.  *Id.*, Subtab 3. AFRH's final decision did not inform the appellant of his right to appeal the

---

[4] The appellant claims he should have remained in the competitive service. AF, Tab 18. I conclude the appellant's argument is without merit for reasons I will explain later in this initial decision.

[5] AFRH had issued another SF-50 stating that the appellant had resigned on January 3, 2004. AFRH, though, acknowledges it issued the resignation SF-50 in error, corrected the mistake and does not now dispute it involuntarily separated the appellant from his position. AF, Tab 12, Subtabs 1, 4b.

[6] Although the appellant apparently had failed to seek equal employment opportunity counseling within the 45-day regulatory time limit, the EEOC administrative judge found grounds for equitable tolling of the time limit. AF, Tab 5, Subtab 3 at 19.

decision to the Board. The appellant filed an untimely Board appeal on September 2, 2006, and on September 14, 2006, he filed a civil action in the U.S. District Court for the District of Columbia.[7]

I issued two show cause orders addressing the timeliness of and the Board's jurisdiction over the appellant's appeal. I determined: (1) The Board has jurisdiction over the appeal as a RIF separation appeal; (2) the RIF appeal was untimely filed but the appellant established good cause for the delayed filing; and (3) the Board lacks jurisdiction over the appellant's appeal under the Veterans Employment Opportunities Act (VEOA) because he failed to exhaust his remedy at the U.S. Department of Labor (DOL) and he did not show a basis for equitable tolling for his untimely filing at DOL. AF, Tabs 20, 25.

Without objection from the parties, I determined that the following are the material issues to be decided in the appeal, to the exclusion of all other issues: (1) Whether the agency established by a preponderance of the evidence that it conducted a RIF for one of the reasons authorized at 5 C.F.R. § 351.201(a)(2)?; (2) whether the agency established by preponderant evidence that it properly applied the Office of Personnel Management RIF regulations at 5 C.F.R. part 351?; (3) whether an agency errors in failing to comply with applicable RIF regulations had an adverse effect on the appellant substantive entitlements?; and (4) whether the appellant established by a preponderance of the evidence that the agency committed age discrimination when it terminated his employment?[8] AF,

---

[7] The appellant apparently filed the civil action in federal district court prematurely because he had filed a Board appeal only 12 days earlier. 5 U.S.C. § 7702(e)(1). The district court acquired jurisdiction, however, when 120 days from September 2 had passed without a judicially reviewable final decision by the Board. This is true even though this results in simultaneous administrative and judicial proceedings. *See Evono v. Reno*, 216 F.3d 1105, 1108 (2000); *Butler v. West*, 164 F.3d 634, 642-43 (1999). The parties informed the Board that the district court judge has held those proceedings in abeyance pending a decision by the Board.

[8] At the beginning of the hearing on March 16, 2007, AFRH orally requested summary judgment on the age discrimination issue. AFRH did not brief the issue or otherwise

Tab 25 at 2-3, 5. I held the appellant's requested hearing on March 16, 2007, at the Board's Washington Regional Office.

<u>The Board has jurisdiction over the appellant's RIF appeal.</u>

The Board's jurisdiction is not plenary; it is limited to those matters over which it has been given jurisdiction by law, rule or regulation. *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). The Board's jurisdiction over RIF appeals is not statutory, but it is granted in regulations issued by the Office of Personnel Management (OPM). *Kohfield v. Department of the Navy*, 75 M.S.P.R. 1, 4 (1997). 5 C.F.R. § 351.901 pertinently states:

> An employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the Merit Systems Protection Board. [9]

Although AFRH did not conduct a formal RIF or follow OPM's RIF regulations, it has conceded that it conducted a de facto RIF separation when it abolished the appellant's position and separated him. AF, Tab 25 at 2. I find preponderant evidence in the record to establish that the appellant held a Schedule A, excepted-service position when AFRH abolished his position and separated him in January 2004. OPM's RIF regulations apply to AFRH's separation action because the appellant's excepted-service position was in the executive branch, and AFRH has not established that the position was excluded from the coverage of the RIF regulations. *See* 5 U.S.C. §§ 104, 105; 5 C.F.R.

---

provide the appellant with a full and fair opportunity to respond to its motion. Although the Board has recognized that summary judgment may be appropriate when deciding claims of discrimination, it is generally preferable to allow an appellant to present whatever evidence he has on discrimination. *See Redd v. U.S. Postal Service*, 101 M.S.P.R. 182, ¶ 14 (2006). AFRH's motion for summary judgment is therefore denied.

[9] The AFRH does not dispute that an employee who has been separated by RIF may appeal to the Board. *See LaMell v. Armed Forces Retirement Home*, 104 M.S.P.R. 413, ¶ 10 (2007).

§§ 351.201(a)(2), 351.202(a)(1), 351.403(b)(2), 351.502. I therefore find the Board has jurisdiction over the appellant's mixed-case RIF appeal.

The appellant established good cause for his late-filed RIF appeal.

The appellant timely filed a mixed-case discrimination complaint with AFRH. When an appellant has timely filed a formal mixed-case discrimination complaint prior to filing a Board appeal, the timeliness of the Board appeal is analyzed under 5 C.F.R. § 1201.154. See Augustine v. Department of Justice, 100 M.S.P.R. 156, ¶ 7 (2005). 5 C.F.R. § 1201.154 pertinently states:

> (b) If the appellant has filed a timely formal complaint of discrimination with the agency:

> (1) An appeal must be filed within 30 days after the appellant receives the agency resolution or final decision on the discrimination issue

5 C.F.R. § 1201.154(b).

The Board's regulations, though, also require an agency to provide notice of Board appeal rights whenever it issues a decision notice on a matter that is appealable to the Board. 5 C.F.R. §§ 1201.21, 1201.152. In addition, the regulations issued by the EEOC require an agency:

> [a]t the time [it] issues its final decision on a mixed case complaint [to] advise the complainant of the right to appeal the matter to the MSPB (not EEOC) within 30 days of receipt and of the right to file a civil action as provided at Sec. 1614.310(a).

29 C.F.R. § 1614.302(d)(3).

It is undisputed that AFRH incorrectly did not process the appellant's discrimination complaint as "mixed-case," and it further failed to provide the appellant notice of his right to appeal to the Board within 30 days of receiving AFRH's June 20, 2006, final decision. AF, Tab 12, Subtab 3 at 10-13. An agency's failure to provide the required notice of appeal rights will generally excuse the employee's failure to file a timely Board appeal. See Shiflett v. U.S. Postal Service, 839 F.2d 669, 674 (Fed.Cir.1988); Parkinson v. Department of Justice, 70 M.S.P.R. 316, 319, review dismissed, 91 F.3d 170 (Fed.Cir.1996)

(Table).  I find AFRH's failure to provide the appellant with notice of Board appeal rights excuses his late filing on September 2, 2006, and he has therefore shown good cause for the delay.

<u>The Board lacks jurisdiction over the appellant's VEOA appeal because he failed to exhaust his administrative remedy at DOL.</u>

On September 18, 2006, I issued a show cause order that, among other things, ordered the appellant to file evidence and argument establishing the Board's jurisdiction over his VEOA appeal.  AF, Tab 3 at 5-7.  In a submission dated October 11, 2006, the appellant informed the Board that he had filed a complaint with DOL alleging a violation of his veterans-preference rights.  AF, Tab 10.  On October 23, the appellant further informed the Board that DOL had closed its investigation because the complaint was not filed within 60 days of the alleged violation and therefore untimely.  AF, Tab 11.  The appellant enclosed a copy of DOL's letter notifying him of his right to appeal to the Board; he also requested the Board to consider his untimely VEOA claim.  *Id.*

Under the VEOA, the Board may have jurisdiction over an appeal alleging a violation of a right under a statute or regulation relating to veterans preference.  5 U.S.C. § 3330a.  In order to establish jurisdiction, an appellant must show that: (1) he is eligible for veterans preference; (2) he is alleging a violation of a right under a statute or regulation relating to veterans preference; (3) *he filed a timely complaint about the same matter with DOL*; and (4) he filed a Board appeal within 15 days of the date he received notice from DOL that it could not resolve the complaint.  The record reflects the appellant untimely filed his VEOA complaint with DOL.

To be timely, a VEOA complaint must be filed with DOL within 60 days of the alleged violation.  5 U.S.C. § 3330(a)(2)(A).  The agency informed the appellant on November 4, 2003, that it was terminating his employment on January 4, 2004.  On January 3, 2004, the agency informed the appellant his last

day of work was January 3. The appellant, however, did not file a complaint with the DOL regarding his termination until October 2006, over 2½ years after the 60-day time limit. As noted above, DOL closed its investigation because his VEOA complaint was untimely filed.

Because *Kirkendall v. Department of the Army*, 479 F.3d 830 (Fed. Cir. 2007) (en banc) was pending at the Federal Circuit, I ordered the parties to present evidence and argument on whether the doctrine of "equitable tolling" should be applied in this VEOA appeal. AF, Tab 14. Both parties responded to this show cause order, the appellant by declaration under penalty of perjury. AF, Tabs 15, 16. The Supreme Court has previously held that there is a rebuttable presumption that the doctrine of "equitable tolling" can be invoked in certain circumstances to excuse an untimely filed lawsuit against the Federal government. See *Irwin v. Department of Veterans Administration*, 498 U.S. 89 (1990); *see also Wood v. Department of the Air Force*, 54 M.S.P.R. 587, 592 (1992). The March 7, 2007, *Kirkendall* en banc decision by the Federal Circuit specifically held that the 60-day time limit for filing a VEOA complaint with DOL *is* subject to equitable tolling. *Kirkendall*, 479 F.3d at 844.

The circumstances justifying equitable tolling, though, are limited and should justify relief only "sparingly." Those circumstances include situations where a claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *Irwin*, 498 U.S. at 96. The doctrine does not extend to mere "excusable neglect." There must be a compelling justification for the delay. *See, e.g., Montoya v. Chao*, 296 F.3d 952 (10th Cir. 2002) (court found equitable tolling not warranted because of the appellant's limited education and little understanding of the law was "precisely the type of "garden variety claim of excusable neglect" the Supreme Court deemed unworthy of meriting equitable tolling), *citing Irwin*, 498 U.S. at 96; *see also Williams v. Department of the Navy*, 94 M.S.P.R.400, 406,

408 (2003), *aff'd, Williams v. Merit Systems Protection Board*, 89 Fed. Appx. 714 (Fed. Cir. 2004) (Table) (the VEOA does not require the DOL to give notice of appeal rights in order to trigger the time limit for filing a VEOA Board appeal).

The appellant essentially alleges in his declaration AFRH failed to give him notice of appeal rights when it separated him in January 2004, and that he only learned about his potential veterans-preference rights and the VEOA in a telephone conversation occurring in June or July 2006. AF, Tab 15. He also suggests general ignorance of the law. *Id.* at 2-3. The appellant has not alleged he filed a defective VEOA claim in a timely fashion or that the agency tricked him into allowing the VEOA deadline to pass for filing a timely DOL complaint. Also, neither AFRH nor DOL had an obligation to inform the appellant of his rights under the VEOA. Unfortunately for the appellant, the reasons he provides for his untimely DOL complaint comprise the type of garden variety claims of excusable neglect that the Supreme Court has determined do not merit equitable tolling. He thus failed to establish a basis for equitable tolling of the time limits for filing a VEOA complaint with DOL. Accordingly, he failed to exhaust his DOL remedy and the Board lacks jurisdiction over his VEOA appeal.

## AFRH conducted its de facto RIF for legitimate managements authorized by 5 C.F.R. § 351.201(a).

The agency has the burden to prove by preponderant evidence that it conducted its de facto RIF for one of the legitimate management reasons specified in 5 C.F.R. § 351.201(a). *See Losure v. Interstate Commerce Commission*, 2 M.S.P.R. 195, 201-02 (1980). A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2). The agency may establish a prima facie case by coming forward with evidence showing a RIF was undertaken for one of the approved reasons; once the agency makes out a prima facie case,

the burden of going forward with rebuttal evidence, but not the burden of persuasion, shifts to the employee. *Losure*, 2 M.S.P.R. at 201-2. Once it has been ascertained that an agency has invoked reduction-in-force regulations for one of the management reasons specified in 5 C.F.R. § 351.201(a), the Board has no authority to review the management considerations which underlie that exercise of agency discretion. *Griffin v. Department of Agriculture*, 2 M.S.P.R. 168, 171 (1980).

The AFRH is an independent establishment in the executive branch. Its purpose is to provide residences and related services to certain retired and former members of the Armed Forces. 24 U.S.C. § 411. AFRH is funded by interest on investments from a trust (apparently initially funded by war booty raised by General Winfield Scott in the Mexican-American War), monthly fees of residents, gifts, fines and forfeitures under 10 U.S.C. § 2772, and deductions from military members' pay. 24 U.S.C. § 419. AFRH operates 2 homes, one in Gulfport, Mississippi, and one in Washington, D.C.

Timothy C. Cox, the Chief Operating Officer of AFRH, testified he was appointed in September 2002 with the mandate to change the model for running the AFRH. HT, Cox Testimony; AF, Tab 12, Subtab 3(11). Cox explained that the trust fund had declined from approximately $156 million in 1995 to $94 million in 2003. *Id.* In 2003, at the Gulfport home AFRH used a "stipend program" for resident employees who could work a minimum of 12 hours and would receive $120 a month. *Id.* Any additional hours are at the resident's choice but would not be compensated. *Id.* The program at the Washington, D.C. home was quite different, though, with the resident-employee positions in the excepted service. *Id.* Cox determined it would be more economical and effective to convert resident-employee positions at the Washington, D.C., home to the stipend program, and this led to abolishing the appellant's position and separating him from employment. *Id.* Other AFRH officials confirm Cox's explanation for the appellant's separation. HT, Dickerson testimony, Fowler testimony; AF, Tab

12, Subtab 3(8)-(12).  The reorganization and cost-saving goals of AFRH's actions fit squarely within the legitimate reasons for conducting a RIF authorized in OPM's regulations.

The appellant attempts to overcome AFRH's stated legitimate reasons by essentially arguing, among other things, AFRH's actions will not result in the savings it asserts, his resident-employee Security Guard position was "replaced" by contractor employees or other "Civil Service" employees (i.e., his position was not truly abolished), and AFRH could have reorganized in ways other than abolishing the resident-employee program and replacing it with the stipend program.[10]  HT, Appellant's Testimony; AF, Tabs 4; 6; Tab 12, Subtab 3(6), 3(7); 13, 18.[11]  The Board, however, has no authority to review whether AFRH's management decisions to accomplish its legitimate goals of cost savings and reorganization were the most effective or fair. *See Griffin*, 2 M.S.P.R. at 171.  I therefore find by preponderant evidence that AFRH abolished the appellant's resident-employee position and separated him for legitimate management reasons authorized by 5 C.F.R. § 351.201.

AFRH's violation of RIF regulations did not have an adverse effect on the appellant's substantive entitlements.

The evidence establishes and AFRH has conceded that it conducted a de facto RIF separation when it abolished the appellant's position and separated him. AF, Tab 25 at 2.  It is also undisputed that AFRH did not follow any of the RIF regulations when it did so.  For the following reasons, however, I find AFRH's

---

[10] The appellant also seeks to question the bona fides of AFRH's de facto RIF by claiming Cox was motivated by age discrimination.  I find this claim without merit for reasons I will explain in detail later in this initial decision.

[11] The documentary record and the appellant's testimony show that he was particularly angry, and perhaps understandably so, because he perceived that he was essentially being asked to remain a security guard but for only $120 a month.  Although this may have been upsetting, the use of the stipend program does not violate any laws.

failure to follow RIF regulations had no adverse effect on the appellant's substantive rights.

The RIF regulations require agencies to establish competitive levels:

> consisting of all positions in a competitive area which are in the same grade (or occupational level) and classification series, and which are similar enough in duties, qualification requirements, pay schedules, and working conditions so that an agency may reassign the incumbent of one position to any of the other positions in the level without undue interruption.

5 C.F.R. § 351.403(a)(1). Also, separate competitive levels are required for excepted service and competitive service employees. 5 C.F.R. § 351.403(b)(1). Further,

> Competing employees [in the excepted service] shall be classified on a retention register in tenure groups on the basis of their tenure of employment, veteran preference, length of service, and performance in descending order as set forth under Sec. 351.501(a) for competing employees in the competitive service.

5 C.F.R. § 351.502(a). Nothing in 5 U.S.C. § 3502 or its implementing regulations guarantees that during a RIF an employee must have the opportunity to compete with other employees for retention. *O'Brien v. Office of Personnel Management*, 144 F.3d 1458, 1464 (Fed. Cir. 1998).

As part of its burden of proving that it properly applied the RIF regulations, an agency must show that it afforded the appellant proper assignment rights. *See McMillan v. Department of the Army*, 84 M.S.P.R. 476, 487, ¶ 18 (1999). Agencies *may*, but are not required, to provide assignment rights to excepted service employees. *See* 5 C.F.R. §§ 351.701, 351.705. Neither is an agency required to fill vacant positions during a RIF. *Madsen v. Veterans Administration*, 754 F.2d 343, 345 (Fed. Cir. 1985).

As I mentioned above, the appellant asserts AFRH violated personnel regulations when he resigned from his competitive service position and AFRH placed him in the excepted-service, resident-employee position in November/December 2002. AF, Tab 18; Tab 19 at 3. He claims that 5 C.F.R.

§ 212.401 required AFRH to keep him in the competitive service even though he accepted the new position. I find that 5 C.F.R. § 212.401 does not apply to the appellant's situation, as this is not a case when the appellant's competitive service position was "first listed" in an excepted service schedule. It is undisputed that the excepted service position already existed in an excepted service schedule approved by the Office of Personnel Management. The uncontroverted record evidence also establishes the appellant resigned from his competitive service position to accept a different excepted service, resident-employee position, and he understood he was doing so. AF, Tab 12, Subtab 4c; Tab 24, Agency Exhibits 3 and 4. The appellant voluntarily applied for the position and AFRH selected him from a list of eligibles, and he promptly requested to withdraw his deposit from the Civil Service Retirement System stating he had "resigned his status as a civil service employee." *Id.*, Subtab 4c at 2. Therefore, prior to his separation on January 3, 2004, the appellant occupied an excepted-service resident-employee position, and his rights under the RIF regulations are those applicable to such a position.

At the conclusion of the prehearing conference, a question remained whether the appellant was a "preference-eligible" veteran for RIF purposes pursuant to 5 C.F.R. § 351.502. AF, Tab 25 at 4. As noted above, 5 C.F.R. § 351.502(a) states that competing, excepted service employees shall be classified on a retention register in tenure groups on the basis of, among other things, "veteran preference" as set forth in 5 C.F.R. § 351.501(a). 5 C.F.R. § 351.501 pertinently provides:

> (d) A retired member of a uniformed service is considered a preference eligible under this part *only* if the member meets at least one of the conditions of the following paragraphs (d)(1), (2), or (3) of this section, ... :
>
> (1) The employee's military retirement is based on disability that either:
>
> (i) Resulted from injury or disease received in the line of duty as a direct result of armed conflict; or

(ii) Was caused by an instrumentality of war incurred in the line of duty during a period of war as defined by sections 101 and 301 of title 38, United States Code.

(2) The employee's retired pay from a uniformed service is not based upon 20 or more years of full-time active service, regardless of when performed but not including periods of active duty for training.

5 C.F.R. § 351.501(d) (emphasis added).

AFRH's human resources witness testified that based on his review of the appellant's Official Personnel File the appellant was entitled to veterans preference for RIF. HT, Brown testimony. The appellant's undisputed "Report of Separation from Military Duty" (DD 214), however, establishes he retired as a Sergeant First Class, E-7, on June 30, 1974, "after 20 but less that 30" years of military service. AF, Tab 11 at 7. Also, nothing in the DD 214 suggests the appellant's military retired pay is based on disability from an injury or disease resulting from "armed conflict" or caused by an instrumentality of war. *Id*. Further, Block 24 ("Disability Severance Pay") is designated "DNA" or "does not apply." *Id*. The appellant also candidly testified that his military retirement pay was based on 23½ years service and was not based on any disability or injury from that service. HT, Appellant's testimony. He then conceded he did not believe he is entitled to veterans preference for RIF under OPM's regulations. *Id*.

I therefore find a preponderance of the evidence establishes the appellant was in an excepted-service Security Guard position, and not entitled to veterans preference for RIF,[12] when AFRH abolished his position and separated him effective January 3, 2004. Preponderant evidence also establishes AFRH abolished all excepted-service, resident-employee positions, including all such Security Guard positions. The appellant, therefore, could not compete for

---

[12] I do agree with AFRH's witness that veterans preference is not material to the outcome of the appeal because all excepted-service, resident-employee Security Guard positions were abolished and the appellant could not compete with any other employees for retention. HT, Brown testimony.

retention, because his entire competitive level was abolished.[13]  AFRH was not required to provide the appellant, an excepted service employee, with assignment rights, and the record establishes it did not do so for any such employees.  HT, Cox, Fowler, Brown, Dickerson testimony.  Accordingly, AFRH has presented preponderant evidence that even if it had complied with RIF regulations when AFRH abolished the appellant's position, it would have lawfully separated him from federal service.  AFRH's violations of RIF regulations therefore had no adverse impact on the appellant's substantive rights.

<u>The appellant has failed to prove his affirmative defense of age discrimination by preponderant evidence.</u>

The appellant must prove his affirmative defense of age discrimination by preponderant evidence. 5 C.F.R. § 1201.56(a)(2)(iii).  To establish a case of discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, the appellant must show that he is covered under the Act, he was subjected to an unfavorable employment action, and his age was a determinative factor in the action. Discrimination on the basis of age may be established by direct or circumstantial evidence.

Direct evidence may be any statement made by an employer that: (1) reflects directly the alleged discriminatory attitude; and (2) bears directly on the contested employment discrimination. *See Arredondo v. U.S. Postal Service*, 85 M.S.P.R. 113, ¶ 13 (2000).  The appellant asserts there is direct evidence of Cox's discriminatory attitude because Cox admittedly stated that AFRH residents "were not there to work, they were there to retire."[14]  I find that this statement,

---

[13] The appellant's RIF rights were not violated because the AFRH chose to abolish the resident-employee positions and provide some of the same services through competitive service and contractor employees.

[14] This quote is taken from the "EEO Counselor's Report" found at Tab 3 of the agency's response file. At the beginning of the hearing the parties stipulated to the expected testimony of Patty Adams, a witness I had approved for the appellant. HT,

when placed in context, does not exhibit a discriminatory attitude based on age. AF, Tab 12, Subtab 3; HT, Cox testimony. Cox was merely making the rational point that military retirees' main purpose in living at AFRH was to reside/retire, not to find employment. HT, Cox testimony. Cox also credibly expressed legitimate concerns that residents should not be given the responsibility to take care of and protect themselves. *Id.*

The appellant further asserts Cox showed a discriminatory attitude when he told the EEO counselor he had an issue with "older guards" at AFRH because "from time to time they would be found asleep." Cox testified that he had a security concern because it had been reported to him that some guards had fallen asleep at the guard shack that controls entry to AFRH. HT, Cox. I also do not find that this statement exhibits a discriminatory attitude based on age. Even if there is some modicum of stereotyping in the reference to "older workers," other record evidence does not support an inference that AFRH's hiring practices or the appellant's separation are related to age; AFRH's security force includes individuals ranging in age from 25 to 70 years old, and the appellant did not present any other evidence suggesting the elimination of the resident-employee program targeted the residents of AFRH because of their age. HT, Dickerson testimony, Rodriguez testimony.[15]

If the appellant establishes a prima facie case of age discrimination by circumstantial evidence,[16] the burden of production then shifts to the agency to

---

Side 1A. Adams would have testified that the words in her EEO report listed in quotation marks and attributed to Cox were direct quotes, but that other comments attributed to him were paraphrased. *Id.*

[15] Reuben Dickerson, a former resident of AFRH, currently is employed at AFRH as a Security Officer, GS-5, and he will be 70 years old this July 4. HT, Rodriguez.

[16] While the necessary elements of a prima facie case of prohibited discrimination vary according to the particular facts and circumstances at issue, a person claiming employment discrimination generally carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is

show a legitimate, nondiscriminatory reason for its action. An employee generally may establish a prima facie case of prohibited discrimination by introducing preponderant evidence to show that he is a member of a protected group, he was similarly situated to an individual who was not a member of the protected group, and he was treated more harshly or disparately than the individual who was not a member of his protected group. *Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 497 (1997). If the agency presents evidence of legitimate nondiscriminatory reasons for its action, an appellant must show that the reasons offered by the agency were not its true reasons, but were a pretext for discrimination. *See, e.g., Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000); *Biter v. Interstate Commerce Commission*, 76 M.S.P.R. 82, 93 (1997); *Decker v. Department of Health & Human Services*, 40 M.S.P.R. 119, 132-33 (1989).

Although the appellant was clearly a member of a protected group based on his age, he failed to present any evidence of similarly situated individuals not in his protected group who were treated differently. All resident-employee positions were abolished, and all resident employees were separated except for those accepting a position in the stipend program. He thus failed to establish a prima facie case of age discrimination. Even if he had, I find AFRH established it abolished the appellant's position and separated him for legitimate nondiscriminatory reasons. In any event, the appellant failed to establish by preponderant evidence that these reasons were a pretext for age discrimination.[17]

---

more likely than not that such actions were based on an impermissible criterion. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 575-76 (1978).

[17] Where the record is complete and a hearing has been held, it is unnecessary to follow the traditional burden-shifting order of analysis; rather, the inquiry shifts from whether the appellant has established a prima facie case to whether he has demonstrated by a preponderance of the evidence that the agency's reason for its actions was a pretext for discrimination. *Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 52 (1998).

## DECISION

AFRH's RIF separation is AFFIRMED.

FOR THE BOARD:

Thomas P. Cook
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **June 14, 2007**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

## JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final. If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c). In some, but not all districts you may have up to 6 years to file such a civil action. *See* 28 U.S.C. § 2401(a).

If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

# CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

U.S. Mail

Theodore R. Wilson

Washington, DC ͡ ͡ ͡ ͡ ͡ ͡ ͡

### Agency Representative

U.S. Mail

Therese Roy
Armed Forces Retirement Home
c/o Department of the Navy
614 Sicard Street, SE, Suite 100
Washington Navy Yard
Washington, DC 20374-5072

_____
May 11, 2007
(Date)

Talethia Owens
Legal Assistant