FILED
APR 2 2 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THEODORE R. WILSON                               Civil Action No. 06-1585 (HHK)
3700 North Capitol St. NW, #128
Washington, D. C. 20011-8400
Phone (202) 291-5968
        Plaintiff,
   v.

Timothy Cox
Chief Operating Officer
Armed Forces Retirement Home-Washington, et al
3700 North Capitol St. NW
Washington, D. C. 20011-8400
        Defendants.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

   Pro se Plaintiff, Theodore R. Wilson, brings this complaint on the basis that he was unlawfully removed from employment at Armed Forces Retirement Home-Washington in violation of several federal statutes and submits this Statement of Material Facts As To Which There Is No Genuine Dispute in accordance with Local Rule 7(h).

1. The Plaintiff was hired at Armed Forces Retirement Home-Washington (AFRH-W) then known as the United States Soldiers' and Airmen's Home on about May 21, 2001, as a GS-5 civil service security guard. See Defendant's exhibit B.

2. In November, 2002, the Plaintiff was reassured that the Plaintiff could move the Plaintiff's residence to AFRH-W and remain full time employed at AFRH-W. See Plaintiff's exhibit 8, 3rd affidavit of Theodore R. Wilson.

3. In November, 2002, the Plaintiff was provided a brochure that reaffirmed the AFRH-W promise and policy of providing residents full time employment. See Plaintiff's exhibit 5.

4. On or about December 1, 2002, Plaintiff moved his residence from an off-campus location to AFRH-W with the understanding that the Plaintiff would remain full time employed. See Plaintiff's exhibit 8, 3rd affidavit of Theodore R. Wilson.

5. When the Plaintiff became a resident employee, he started being paid less per hour than he had been paid as a civil service employee.

6. An EEO policy dated, January 8, 2003, was posted at select locations throughout AFRH-W from January 2003 through December 2007 which promised that:

> "…Everyone at the Armed Forces Retirement Home-Washington has the right to work in an environment where there is opportunity for them to reach their full potential…" See Plaintiff's exhibit 6."

7. Plaintiff was notified in about July/August 2003 that all resident employees could be removed from employment in the coming months and that the stipend program would be available as a source of part time employment. (Agency claims to have no copy of letter).

8. The Plaintiff was informed on November 4, 2003, by letter of intent that his last day of employment would be January 4, 2004. See Defendant's exhibit F.

9. Plaintiff was notified on January 3, 2004, that that would be his last day of employment. See Defendant's exhibit I, page 3, item #3.

10. Actually, the issue of whether or not the resident security guards would be removed from employment was not decided until in late December 2003. See Defendant's exhibit 9, attached, affidavit of William Waninger. (Note: Chief Waninger departed employment at AFRH-W in late December 2003.)

11. The Agency fired the Plaintiff and failed to provide the Plaintiff any oral or written information regarding his rights to appeal his firing. Plaintiff's exhibit 1, lines 5 thru 10.

12. The Plaintiff was issued a SF 50 more than 30 days after his last day of work which stated he had resigned his employment position at AFRH-W. See Defendant's exhibit C, page 1, item 5D.

13. In the days of January/February 2004 after having been fired, the Plaintiff was approached by Sgt. Kevin McCombs and asked to return to work in the newly instituted stipend program and man the Q-M Gate for two hours a day. See Defendant's exhibit E, page 2, 1st par.

14. The Q-M Gate was opened twice a day to accommodate rush hour traffic. See COO's false statement, exhibit A, page 24, lines 20 thru 24, and page 25, lines 4 thru 6.

15. The Plaintiff complained of being fired to an AFRH-W official and was advised to file a complaint with the EEO office representing AFRH-W at the Bureau of the Public Debt in Parkersburg, WV. See Plaintiff's exhibit 1, affidavit of Theodore R. Wilson, page 1, line 11.

16. Plaintiff filed an informal EEO complaint on or about March 23, 2004. See Defendant's exhibit "J", page 1, line B).

17. Plaintiff went through the formal EEO complaint process to have his pleading dismiss by Administrative Judge Katherine Brown, June 2006. See Defendant's exhibit K, page 3, lines 16 thru 19.

18. Plaintiff appealed to the Merit Systems Protection Board where the Plaintiff's case was dismissed by Administrative Judge Thomas P. Cook on May 11, 2007. See Defendant's exhibit K, page 18, line 1.

19. An EEO policy, dated April 16, 2004, with identical reading and provisions to that

described in item 5 above remained posted at locations through out AFRH-W from April 2004 through December 2007. See Plaintiff's exhibit 7.

20. In defiance of orders from Administrative Judge Katherine Brown, and later, Administrative Judge Thomas Cook, and, in violation of 29 C.F.R. Par. 1614.603, the Agency has never offered to settle this complaint with the Plaintiff.

> 29 C.F.R. Par. 1614.603. "Each agency shall make reasonable efforts to voluntarily settle complaints of discrimination as early as possible in, and throughout, the administrative processing of complaints, including the pre-complaint counseling stage."

21. On November 13, 2007, Plaintiff mailed to the Court and the Defendant a Request to Amend Complaint with an Amended Complaint attached.

22. On January 17, 2008, the Court permitted Plaintiff to Amend the Complaint.

23. Resident employee positions were not abolished as stated by Agency witnesses. Most resident employees were replaced by either civil service employees or contract employees. See Plaintiff exhibit 2, affidavit of George I. Lausund (Deceased) and Defendant's exhibit A, Cox's testimony, page 16, lines 6 thru 10 and lines 18 thru 25.

24. Civil Service employees and contract employees that replaced resident employees are being paid more to do the work than resident employees were being paid.

25. The Defendant has never produced any comparison figures to prove its claim of the resident employment program costing "one million dollars a year."

*Theodore R. Wilson*
Theodore R. Wilson
3700 North Capitol St. NW, #128
Washington, D. C. 20011-8400
(202) 291-5968
Plaintiff pro se

```
*******************************                                FILED
                              *
THEODORE R. WILSON            *                              APR 2 2 2008
    Complainant               *
         vs.                  *      AFRH-04-01        NANCY MAYER WHITTINGTON, CLERK
                              *                          U.S. DISTRICT COURT
ARMED FORCES                  *
RETIREMENT HOME               *
    Defendant                 *
*******************************
```

### AFFIDAVIT OF SHERBA ESSEX

The accepted issue in this case is as follows:

> Was the Complainant discriminated against because of his age (72) when he was terminated from his position of Security Guard 03578-1207-01 at the Armed Forces Retirement Home on January 4, 2004?

Q: What is your current employment status with the Armed Forces Retirement Home?

A: I retired. I was a Human Resources Officer responsible for Employee and Labor Relations for the Armed Forces Retirement Home.

Q: What is your age?

A: I am 57 years old. (DOB: 3/31/47)

Q: Are you familiar with the Complainant, Theodore Wilson?

A: Yes, Mr. Wilson was a resident employee of the guard force.

Q: What is your understanding of Mr. Wilson's termination from his position of Security Guard in January 2004?

A: All resident employees were let go and a stipend program was instituted for residents who wanted to work. Resident employees are not covered by the Reduction In Force (RIF) guidelines. The decision was made by the Resident Services Directorate. My employees just handled the paperwork involved in the personnel transactions.

Q: There appears to be 3 SF-50's, regarding Mr. Wilson's employment. The first one states the nature of action is resignation; second SF-50 states the nature of action is a cancellation and the third one states termination.

**Exhibit 10**



       Your signature is on all three. Can you explain this?

A: At the time we were also doing a lot of RIF's, so it was probably just an error that was corrected by the cancellation and a new SF-50.

Q: The Complainant alleges that he was terminated based on age. Please comment.

A: My understanding is that the terminating of resident employees was a cost saving measure. In addition, the Gulfport retirement home had a stipend program for resident employees that they duplicated at the Washington Armed Forces Retirement Home.

Q: Do you have anything further to add?

A: No.

## CERTIFICATION

I, Sherba Essex, have read the above transcribed verbatim statement, consisting of 2 pages, it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, GPO employees and other federal employee witnesses. Failure of the GPO or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

_Sherba Essex_
Sherba Essex

Dated: 21 January 2005

Affirmation by: _[signature]_
Jonathan Kaufmann

Sworn to and subscribed before me in my presence this 21st day of January 2005 - Virginia
Notary Public, in and for YORK County
_[signature]_ Notary Public

RAWLE A. STANISLAUS
NOTARY PUBLIC
Commonwealth of Virginia
My Commission Expires Mar. 31, 2005