UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE R. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1585 (HHK) |
| ) | |
| TIMOTHY COX, ) | |
| CHIEF OPERATING OFFICER, ) | |
| ARMED FORCES RETIREMENT ) | |
| HOME-WASHINGTON, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants, Timothy Cox, Chief Operating Officer, Armed Forces Retirement Home-Washington, and the United States of America, by and through counsel, respectfully file this reply memorandum in response to Plaintiff's Response to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pltf's Opp.").[1] Plaintiff filed this action pursuant to "Title VII of the Age Discrimination in Employment Act and the Rehabilitation Act." Amended Complaint ("Am. Cmplt") at ¶ 3. Plaintiff also alleges "several additional violations of United States Codes and Regulations." Id. at ¶ 1. All of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and/or failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a), 12(b)(1) and 12(b)(6).

---

[1] Along with the response which appears to be an Opposition to Defendants' Motion, Plaintiff pro se filed, inter alia, a document entitled "Plaintiff's Response to Defendant's 'Facts' in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment," to which Defendants also respond.

**ARGUMENT**

**A**. **Plaintiff's Claim Under the Rehabilitation Act Must Be Dismissed**.

1. Plaintiff Failed to Comply With Federal Rule of Procedure 8(a).

To sustain a disability claim pursuant to the Rehabilitation Act, a plaintiff must as a threshold matter establish that he or she has a disability. See Lester v. Natsios, 290 F. Supp.2d 11 (D.D.C. 2003) (citing Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002); Stein v. Ashcroft, 284 F.3d 721, 724 (7th Cir. 2002)). However, no where in Plaintiff's Amended Complaint does he indicate that he has a disability or attempt to explain how that Act was violated.

Federal Rule of Civil Procedure 8(a) states that a claim shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Neither Plaintiff's Amended Complaint nor his Complaint contain a "short and plain statement of [a] claim [under the Rehabilitation Act] showing that [the Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Plaintiff lists statutes which he alleges have been violated, see Am. Cmplt ¶ 24, he has failed to provide a statutory citation for the Rehabilitation Act nor allege a factual basis for such a claim. Clearly, Plaintiff has failed to meet the liberal requirement of Rule 8(a), and any claim of discrimination under the Rehabilitation Act must fail.

2. Plaintiff Failed to Exhaust His Administrative Remedies.

Plaintiff failed to exhaust his administrative remedies because he did not assert any claim of a violation of the Rehabilitation Act in the proceedings at the administrative level. See Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendants' Motion"), Exhibit J. In fact, the Equal Employment Opportunity Counselor's Report indicates

that physical and mental disability are inapplicable.  Id.  Plaintiff's failure to indicate that disability was a basis for his claim bars him from attempting to initiate a civil action as to that claim now.  See Brown v. Gen. Serv. Admin., 425 U.S. 820, 832 (1976) (to preserve right to maintain employment discrimination suit, claimant must exhaust administrative remedies by filing claim of discrimination with allegedly offending agency).  See also Koch v. Donaldson, 2004 WL 758957, *1 (D.C. Cir. 2004)(citing Leorna v. Dep't of State, 105 F.3d 548, 550 (9th Cir. 1997)).  Therefore, Plaintiff's purported claim under the Rehabilitation Act must be dismissed for failure to exhaust administrative remedies.

Plaintiff, nevertheless, claims that he "exhausted his known administrative remedies." Plaintiff's Response to Defendants' Facts in Support [of] Defendants' Motion to Dismiss or, in the Alternative, For Summary Judgment (Pltf's Response to Facts") at p. 1.  He claims that the Agency advised him to file his objections regarding the abolishing of the program to the EEO office and should have "inform[ed him] of the MSPB . . . ."  Id.  He claims that because "[i]t was an AFRH-W official who directed [him] to the EEO office . . . [he] has exhausted his administrative remedies.  Id. at 2.

However, Plaintiff's argument is without merit for several reasons.  First, Plaintiff did file a complaint with the Equal Employment Opportunity ("EEO") Office.  There, Plaintiff claimed that he was terminated on the basis of his age only.  He made no claim under the Rehabilitation Act.  Defendants' Motion, Exhibit J at p. 1.  Plaintiff's complaint was accepted and investigated in accordance with 29 C.F.R. § 1614.108.  The parties engaged in discovery and plaintiff requested a hearing before an administrative judge.  On May 24, 2006, the Administrative Judge issued a decision finding that AFRH-Washington had not discriminated against Plaintiff.

Moreover, on September 2, 2006, the Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") alleging that the AFRH had improperly terminated his employment.[2] The MSPB determined that it had jurisdiction over the appeal as well as the claim of age discrimination as a mixed case appeal of a separation by reduction in force ("RIF"). Defendants' Motion, Exhibit K at pp. 1-2. On March 16, 2007, a hearing was held before the MSPB. The material issues were:

> (1) [w]hether the agency established by a preponderance of the evidence that it conducted a RIF for one of the reasons authorized in 5 C.F.R. § 351.201(a)(2) []; (2) whether the agency established, by preponderant evidence that it properly applied the Office of Personnel Management RIF regulations in 5 C.F.R. part 351 []; (3) whether an[y] agency errors in failing to comply with applicable RIF regulations had an adverse effect on [Plaintiff's] substantive entitlements[]; and (4) whether [Plaintiff] established by a preponderance of the evidence that the agency committed age discrimination when it terminated his employment.

Id., Exhibit K at p. 4.

At the hearing, the Armed Forces Retirement Home- Washington ("AFRH-Washington" or "Agency") stipulated that it had conducted a de facto RIF, and did not follow appropriate RIF procedures. Id. at 5. On May 11, 2007, the MSPB Administrative Judge issued an Initial Decision finding that the Agency had conducted the RIF for an <u>authorized</u> reason in accordance with 5 C.F.R. § 351.201(a)(emphasis added). Id. at 9. Although the agency conceded that it had not followed RIF regulations, the Administrative Judge found that Plaintiff was not harmed by the failure to follow those regulations. Id. at 11-12. The Administrative Judge also found that the Agency had not discriminated against Plaintiff on the basis of his age when it terminated him

---

[2] Plaintiff also filed a complaint with the Office of Special Counsel ("OSC"). Pltf's Response to Facts at p. 2. OSC determined that it lacked jurisdiction over the complaint. Id.

from his position as security guard. Id. at 15-17.[3]

### 3. Plaintiff Has Abandoned His Rehabilitation Act Claim.

Moreover, in Plaintiff's opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, plaintiff failed to address Defendants' argument that Plaintiff's claim under the Rehabilitation Act must be dismissed. Therefore, these claims have been abandoned by Plaintiff and should be dismissed.

### B. Plaintiff's Claims Under the Age Discrimination in Employment Act Fail.

Plaintiff claims that he was discriminated against, based upon his age: 1) when his position was converted from Competitive Service to Excepted Service Status when he became a Resident Employee security guard at AFRH-Washington, Am. Cmplt at ¶ 13; and 2) when he was terminated from his position as a Resident Employee security guard at AFRH-Washington. Id. at ¶ 1.

The Age Discrimination in Employment Act ("ADEA") provides, in relevant part, that:

> [all] personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies . . . shall be made free from any discrimination based on age.

29 U.S.C. § 621 et seq. In a case brought under the ADEA, the plaintiff has the ultimate burden of proving that age was a determining factor in the challenged employment decision. Miller v. Lyng, 660 F. Supp. 1375, 1376 (D.D.C.1987) (citing Krodel v. Young, 748 F.2d 701, 706 (D.C. Cir.1984)). The plaintiff must demonstrate that "'but for' the discriminatory motive, the

---

[3]Plaintiff states that he "understood that his complaint had been equitable tolled in the EEO and MSPB which led to his ability to be heard in Federal District Court. If equitable tolling is not already in force, [he] is requesting it now." Pltf's Response to Facts at p. 9. However, Plaintiff's claims already have been adjudicated before the Equal Employment Opportunity Commission and the MSPB. Each body dismissed Plaintiff claims on the merits.

[plaintiff] would have been hired, promoted, or retained." Id.

In Brady v. Office of the Sergeant at Arms, United States House of Representatives, the District of Columbia Circuit determined that:

> where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not - - and should not - - decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas.

520 F.3d 490 (D.C. Cir. 2008). Here, assuming Plaintiff had suffered an adverse employment action, Defendants had legitimate, non-discriminatory reasons for their actions, and Plaintiff cannot establish that he was discriminated against on the basis of his age.[4]

### 1. Conversion from Competitive Service to Excepted Service Status Upon Becoming a Resident Employee Security Guard.

Plaintiff claims that he was discriminated against when his position was changed from Competitive Service to Excepted Service. However, Plaintiff did not suffer an adverse employment action. Rather, Plaintiff voluntarily "*applied for* and *accepted* an Excepted Service Security Guard position as a 'resident-employee.'" Defendant's Motion, Exhibit K (emphasis added); Exhibit O. Upon being selected for the position, Plaintiff resigned from his Competitive Service position. See id., Exhibit H (Notification of Personnel Action, effective 12/1/02).

The position of Resident Employee was designated by the Office of Personnel Management as an Excepted Service position in the Executive Branch. 68 Fed. Reg. 71,183 (Dec. 22, 2003). Moreover, the position is open only to residents of the home. One cannot be a resident of the home and remain in the Competitive Service. Plaintiff claims that he did not

---

[4]Despite the Brady Court's admonition that District Courts need not decide whether a plaintiff makes out a prima facie case, it clearly held that a plaintiff still must establish that he suffered an adverse employment action.

know the difference between Competitive Service to Excepted Service. Pltf's Response to Facts at p. 3. However, Plaintiff voluntarily chose to become a resident at AFRH-Washington. In addition, Plaintiff voluntarily chose to continue his work as a security guard. Because Plaintiff was a resident and chose to work at AFRH-Washington, it was required that his employment status be converted from Competitive Service to Excepted Service. Had Plaintiff remained in the Competitive Service, he would have been unable to participate in the Resident Employee Program. Therefore, Plaintiff did not suffer an adverse action and there is nothing to establish that Plaintiff was discriminated against on the basis of age when he voluntarily changed from Competitive Service to Excepted Service.[5]

Assuming arguendo that Plaintiff suffered an adverse employment action, Defendants had a legitimate, non-discriminatory reason for their actions. In order to work and reside at the home - - be a Resident Employee - - Plaintiff was required to be in the Excepted Service. Therefore, the Agency properly converted Plaintiff from Competitive Service to Excepted Service status.[6] Moreover, Plaintiff cannot prove that the agency's reason for this action was a pretext for unlawful discrimination.[7] See infra at pp. 9-13.

---

[5] While Plaintiff claims that other individuals are security guards at AFRH-Washington and are not in the Excepted Service, these individuals are not also residents of AFRH-Washington.

[6] To the extent that Plaintiff is claiming that his conversion from Competitive Service to Excepted Service status was improper on any basis, Plaintiff's claim fails. See 68 Fed. Reg. 71,183 (Dec. 22, 2003).

[7] Plaintiff's appeal to the MSPB regarding his conversion from Competitive Service to Excepted Service status was untimely. See Defendants' Motion, Exhibit K at p. 4. However, the MSPB found that Plaintiff established good cause for the delay, and heard Plaintiff's discrimination claim and termination appeal. See id. at 3-4. Each of these claims was denied.

### 2. Abolishment of the Position of Resident Employee Security Guard at AFRH-Washington.

Plaintiff claims that he was discriminated against when he was dismissed as a Resident Employee security guard at AFRH-Washington. Plaintiff states that he did not know he was "sign[ing] away his . . . competitive status. [Therefore, he] should have retained his statue (sic) as a competitive service employee with all the attendant rights and privileges including R-I-F privileges."[8] Am. Cmplt at ¶ 13.

However, Plaintiff did not suffer an adverse action. The Resident Employee Program was abolished for **all** Resident Employees of the Armed Forces Retirement Home in Washington, D.C., not just Plaintiff. In addition, the Agency had legitimate non-discriminatory reasons for removing Plaintiff from his position. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

#### a. Poor Financial Position of the Trust Fund Upon Which AFRH-Washington Relied

In light of the poor financial position of the Trust Fund, Defendants made a business decision that AFRH-Washington should abolish the Resident Employee Program and implement a Stipend Program.[9] AFRH-Washington is funded by a Trust which, in turn, is funded with

---

[8] Although Plaintiff makes no such argument in his Amended Complaint or Complaint, at the administrative level, he contended that he was improperly separated from his position through a Reduction in Force. See Defendants' Motion, Exhibit A at p. 1. The Agency acknowledged that it conducted a de facto RIF and "did not follow any RIF regulations when it abolished [Plaintiff's] position . . . ." Id. at 3, 4. However, the Merit Systems Protection Board Administrative Judge found that "the failure to follow RIF regulations had no adverse effect on [Plaintiff's] substantive rights. Id. at 12.

[9] Indeed, as a cost saving measure, Reductions in Force took place throughout AFRH-Washington. Id. at 17.

monthly fees paid by residents, monies received from gifts, monies received from the disposition of property or facilities, monies paid as fines and forfeitures under 10 U.S.C. § 2772, deductions from the pay of servicemen, and interest paid on investments made by the Trust. 24 U.S.C. § 419. See Defendants' Motion, Exhibit K at p. 9. AFRH-Washington does not take appropriations. Id., Exhibit A at p. 11. According to the Chief Operating Officer of AFRH-Washington, Timothy Cox, "[t]he trust fund had gone from $156 million down to $94 million over a period of about nine years. So Congress stepped in and said we need to reevaluate how the home is operating." Id. at 11. It was then determined that the Resident Employee Program in Washington D.C. was costing "over a million dollars a year . . . ." Id. at 16.[10]

Nevertheless, in support of his argument that the Resident Employee Program should not have been abolished, Plaintiff cites to a letter written to the Office of Personnel Management, by

---

[10]On March 13, 1999, Mr. David Lacy, former Chief Executive Officer/Chairman of the Board of the AFRH-Washington testified before Congress. See Exhibit A (Statement of Mr. David Lacy before the 106th Congress). In that testimony, he indicated that the "future viability of the [Armed Forces Retirement] Homes [was] in jeopardy . . . ." Id. at 6. Moreover, because "[a]nalyses in the early 1990 predicted that the Trust Fund would be insolvent by 1998[,]" id. at 2, the Armed Forces Retirement Home Board, local Boards of Trustees and the senior leadership of AFRH-Washington and the Armed Forces Retirement Home in Gulfport, Mississippi, "initiated actions to reduce expenditures and enhance revenues." Id. These initiatives "reduc[ed] the annual deficit to $8 -10 million, and delay[ed] the projected year of the potential insolvency . . ." Id. at 3. The initiatives included, reducing the number of veterans serviced by AFRH-W; closing two dormitories; *reducing staff by 24%*; increasing resident fees; and developing a business plan to leverage 49 acres of real property assets of AFRH-W through sale or lease. See id. at 3, 4, 6. Mr. Lacy stated that the aim of the initiatives was to:

> "help[ the] Trust Fund . . . achieve long-term solvency, so that the Armed Services Retirement Homes w[ould] be available not only for today's residents to live out their lives in an environment of dignity and care, but also that the Homes w[ould] be available to continue the legacy of care for men and women of today's Armed Forces when they age.

Id.

9

Joan R. Esch, Personnel Officer. This letter indicated that to replace Resident Employees with civilian employees "would cost an additional $500K per annum." See Am. Cmplt, Exhibit 5. However, this letter was written on March 24, 1989, nearly fifteen years before the Resident Employee Program was abolished. Moreover, as is indicated in the sworn affidavit of Timothy Cox, the balance of the Trust Fund "had declined from $156 million in 1995 to $94 million in 2003." Defendant's Motion, Exhibit D. Consequently, "[t]he resident employment program was costing . . . one million dollars a year. It was more cost effective to have the jobs filled by GS employees or contract out the jobs." Id. A de facto reduction in force performed for economic reasons is not discrimination based upon age. Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).

  Plaintiff disputes Defendants' claims that the elimination of the Resident Employee Program was based upon a legitimate financial decision. He states that "Defendant has produced no figures to support that claim." Pltf's Response to Facts at p. 12. However, Plaintiff fails to realize that "in producing nondiscriminatory reasons for its challenged action, the employer is not obligated to support these reasons with objective evidence sufficient to satisfy the preponderance of the evidence standard." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). The ultimate burden of proving intentional discrimination always rests with the plaintiff. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); accord St. Mary's Honor Ctr., 509 U.S. at 511 (1993) (holding that a complainant "at all times bears the ultimate burden of persuasion") (internal quotation marks and citations omitted). Thus, the defendant's burden is satisfied if it simply explains what it has done or produces evidence of legitimate, nondiscriminatory reasons. St. Mary's Honor Ctr. , 509 U.S. at 502. Even a "subjective reason can be legally sufficient, legitimate and nondiscriminatory if the [agency] articulates a clear and reasonably specific

factual basis" for its subjective opinion. Bowdre v. Richardson, 131 F. Supp.2d 179, 188 (D.D.C. 2001).

Plaintiff also stated that the Chief Operating Officer said that the Resident Employees "were not doing their jobs properly, as from time to time they would be found asleep, which was not safe for a government agency in DC, what with all the threats since 9/11." Pltf's Response to Facts at p. 12. Plaintiff then noted that "if a company targets older workers for layoff (firing), a case for age discrimination can be established." Id. (citation omitted). However, the Chief Operating Officer's statement does not reference the age of Resident Employees. Rather, it reflects a legitimate concern for the safety of the agency and its residents in a post 9/11 environment. Cf. Breen v. Mineta, 205 WL 3276163, at *4-5 (D.D.C. Sept. 30, 2005) (federal employer's statement that fiscal budget was strained and approximately forty percent of relevant employees were eligible for retirement did not constitute evidence of discrimination because the statement only identified concerns about excessive costs not "inaccurate and denigrating generalizations about age.").

Plaintiff claims that he was well trained for the position. See Pltf's Response to Facts at p. 10. However, a defendant is not required to prove that the Agency made the wisest choice, but only that the reasons for the decision were non-discriminatory. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986)(citing Burdine, 450 U.S. at 258-59). Employers have broad discretion to set policies and carry out personnel decisions, and the District of Columbia Circuit has emphasized that a court "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." Fishbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996). See McPherson v. Dep't of Water Resources,

734 F.2d 1103 (5th Cir. 1984)("We do not sit to revise employment decisions taken hastily or for insufficient reasons, only those taken for illegal ones."); see also, Marshall v. Fed. Express Corp.,130 F.2d 1095, 1100 (D.C. Cir. 1997); Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997).  The Supreme Court has stated," [c]ourts are generally less competent than employers to restructure business practices and unless mandated to do so by Congress they should not attempt it."  Furnco Construction Corp. v. Waters, 438 U.S. 567, 578 (1978).  In a discrimination claim it is the employer's motivation and intent which is at issue, not his business judgment.  Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987).

        b. Consistency in the Operations of AFRH-Washington and AFRH-Mississippi

Another legitimate, non-discriminatory reason for the elimination of the Resident Employee Program was the fact that AFRH-Washington and the Armed Forces Retirement Home in Gulfport, Mississippi ("AFRH-MS") were operating under different systems.  While AFRH-Washington used Resident Employees, AFRH-Mississippi used a Resident Stipend System to pay the employees who were also residents of the home.  After evaluations from successive Inspectors General, see Defendants' Motion, Exhibit A at p. 14, it was determined that, because the homes were each part of one agency, the AFRHs should employ its Resident Employees in a consistent manner.  Id.  Consequently, the Resident Employee Program was abolished, and the Resident Stipend Program was instituted at AFRH-Washington.  Id. at 21.

Therefore, there is simply no evidence to suggest that Plaintiff was removed from his position as Resident Employee, at this retirement facility, on the basis of his age.  Plaintiff merely relies on his unfounded personal beliefs and suppositions [which are] legally insufficient

to establish pretext." Rozkowiak v. Baxter Healthcare Corp., 1998 WL 422284, *5 (N.D. Ill. July 22, 1998) (citing Kizer v. Childrens' Learning Ctr.,962 F.2d 608, 613 (7th Cir. 1992). See Saunders v. DiMario, No. 97-1002, 1998 WL 525798, at *4 (D.D.C. Aug. 14, 1998), aff'd, 194 F.3d 175 (D.C. Cir.1999) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext."); Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 677 (7th Cir. 1997) ("rebuttal [of an employer's proffered reason for its action] must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination."). Moreover, Plaintiff cannot present any objective evidence that the agency's two proffered reasons for its action were pretexts for unlawful discrimination. Burdine, 450 U.S. at 253; McDonnell Douglas v. Green, 411 U.S. 792, 804 (1973); see also St. Mary's Honor Ctr., 509 U.S. at 507-08; Aka, 156 F.3d at 1288. Therefore, Plaintiff's claim that he was removed from his position as Resident Employee at AFRH-Washington because of his age must fail.[11]

### C.  Plaintiff's Due Process Claim is Without Merit.

In his Opposition, Plaintiff for the first time raises a Due Process Claim pursuant to the Fifth Amendment of the Constitution. As a preliminary matter, this claim should be dismissed

---

[11]Plaintiff claims that it was "stated orally and in writing that [he] would be able to work at AFRH-W and be paid for his work." Pltf's Response to Facts at p. 12. He refers to a brochure which stated that "AFRH-Washington typically ha[d] several openings in a variety of capacities . . . ." Id. Plaintiff then claims that "AFRH-Washington officials promised [him] that he could remain fully employed . . ." Id. However, nothing that Plaintiff has cited indicates that the Agency had a binding obligation to employ Plaintiff in the Resident Employment Program in perpetuity.

Plaintiff also claims that "Defendant failed to respond to Plaintiff's estoppel pleading" which concerned the same argument. Pltf's Opp. at p. 1. However, Plaintiff is incorrect. In Defendants' Motion, this argument clearly was addressed. See Defendants' Motion at p. 20 n.20.

because Plaintiff failed to raise this in his Amended Complaint[12] or his Complaint, for that matter.  Specifically, Plaintiff claims that "[t]he Agency . . . deprived the AFRH-W residents of their labor - their property - without due process of law."  Pltf's Response to Facts at p 7.  Plaintiff's argument fails.

Under the Resident Stipend Program, residents who are employees are to be paid $120 per month for their services.  Defendants' Motion, Exhibit D at p. 2, Exhibit A at pp. 15, 20.  If residents wished to work additional hours, that is solely on a voluntary basis.  See id., Exhibit K at p. 10.  However, Plaintiff argues that the Resident Employee Program was abolished "to put the resident employees in a position to provide free labor."  Pltf's Response to Facts at p. 6.  However, no resident is forced to work additional hours.  If residents chose to work additional hours, they may do so.  If they do not wish to work additional hours, they are not required to do so.[13]  Moreover, Plaintiff does not claim that he was required to provide any alleged "free labor."  Therefore, any claim that his Due Process rights were violated by being required to "donate" part of his labor is wholly without merit.

In addition, Plaintiff's Due Process claim is also without merit because this Circuit has held that:

Neither the Supreme Court nor this court has ever recognized an interest in public

---

[12]In his Amended Complaint, Plaintiff only indicated that he amended his complaint to include violation of the ADEA and "several additional violations of the United States Code and Regulations."  Am. Cmplt at ¶ 1.  Plaintiff also listed laws that he alleged were violated.  He did not indicate that he believed that the Fifth Amendment to the Constitution was violated as well.  See id. at ¶ 24.

[13]While Agency employees allegedly may ask residents workers to perform tasks without knowing whether they have completed their voluntary hours, Pltf's Response to Facts at p. 5, these workers are not required to perform the work and may simply say "no."

> employment as fundamental. In fact, the Supreme Court has said that its decisions "give no support to the proposition that a right of government employment per se is fundamental," <u>Massachusetts Bd. of Ret. v. Murgia</u>, 427 U.S. 307, 313 (1976) (per curiam), a statement the Court later described as a holding that 'there is no fundamental right to government employment.' <u>United Bldg. & Constr. Trades Council v. Mayor & Council of Camden</u>, 465 U.S. 208, 219(1984).

<u>Am. Fed'n of Gov't Employees, AFL-CIO v. U.S.</u>, 330 F.3d 513, 523 (D.C. Cir. 2003).

Therefore, Plaintiff's Due Process claim should be dismissed.

        Respectfully submitted,

        /s/
        JEFFREY A. TAYLOR, D.C. Bar # 498610
        United States Attorney

        /s/
        RUDOLPH CONTRERAS, D.C. BAR #434122
        Assistant United States Attorney

        /s/
        MARIAN L. BORUM, D.C. BAR #435409
        Assistant United States Attorney
        555 Fourth Street, N.W.
        Civil Division
        Washington, D.C.  20530
        (202) 514-6531
        Attorneys for Defendant

Of Counsel:
Therese Roy Epstein
Attorney Advisor
Department of the Navy
1301 South Gate Road
Arlington, Virginia  22203

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 16th day of June, 2008, I caused the foregoing to be served, via first class mail, postage prepaid, to plaintiff *pro se* as follows:

Theodore R. Wilson
3700 North Capitol Street, N.W., #128
Washington, D.C.  20011-8400

                                      /s/
                                  MARIAN L. BORUM, D.C. Bar # 435409
                                  Assistant United States Attorney